Spofford *v.* True.

SPOFFORD *&* als. versus TRUE.

| 33 | 283 |
| 89 | 176 |
| 33 | 283 |
| 106 | 95 |

A grant of land, conditioned for a subsequent payment to be made therefor, though it reserves, toward such payment a lien upon the lumber which the grantee may take therefrom, is a grant upon a condition subsequent.

Till an entry for condition broken, the land continues vested in the grantee.

A lien, reserved in a grant of land, upon the lumber which the grantee may take therefrom, is postponed to the lien given by the statute of 1848, to laborers who may aid him in getting the lumber.

That statute is not in conflict with any provision of the constitution.

When a grant of land upon a condition subsequent, authorizes the grantee to take lumber therefrom, subject to a lien for the purchase money, and several distinct quantities or lots of lumber are cut and driven to the boom by the grantee, (the persons employed by him to work in getting one of the lots having no connection with those who labor in getting another of the lots,) the lien of each laborer, is upon the lot, upon which he worked.

But, if by the negligence or carelessness of the *grantee* in such a deed, such several lots of lumber become intermixed, so that the respective lots upon which the several laborers worked, cannot be distinguished, their respective liens are upon the whole mass.

In actions by the laborers, to establish their lien claims, such an intermixture, if it occurred without their fault, is evidence of negligence or carelessness in the *grantee*, unless it was produced by some fraud or some accident.

So far as relates to the lien claims of the laborers, the *grantee* in the deed is to be treated as the *agent of the grantors*, and they are responsible for the consequences of his negligence or carelessness.

ON FACTS AGREED.

TROVER. The statement presents, in substance, the following facts: —

The plaintiffs were proprietors of a township of timbered land. They conveyed it to Wm. McCrillis, his heirs and assigns, to be paid for at several successive periods, and upon a condition, that the conveyance should be void, if such payments should not be made. The grant reserved, toward payment of the purchase money, a lien of five dollars upon each thousand feet of the lumber which he should take from the tract, and authorized timber to be cut subject to such lien. McCrillis made a contract with Haynes & Co., by which they were to cut, haul, and drive to the boom, a large quantity of logs from the land at stipulated prices to be paid by him. They employed many laborers to cut and haul. These laborers were divided into four gangs, each of which worked upon distinct parts of the township, and hauled the logs which they cut to separate landings. There was no connection between any of these gangs in their operations.

All the logs at the four landings were marked alike.

The logs were driven down the river by Haynes & Co. When arrived at the boom, they had become intermixed, so that it was not possible to tell which of them had been drawn to either of the four landings.

With a view to enforce the lien, given in such cases by the statute of 1848, the said laborers seasonably instituted their several suits for their services against Haynes & Co. Upon the writs in those suits, the logs were attached, and were sold upon the writs according to law by a deputy sheriff. The suits are yet pending.

In one of those suits, William McMaster is the plaintiff. In his account, annexed to the writ, is a charge for his labor

and also a charge of "$6,37, for cash expended in getting into the woods."

For the aforesaid doings of the deputy sheriff, this action of trover is brought against the sheriff by the *grantors of McCrillis*, who claim the logs, the condition in their deed to him having never been performed.

*McCrillis* and *Crosby*, for the plaintiffs.

The word "lien," as used in the plaintiff's grant to McCrillis, has received a judicial construction. It imports that the grantor, by reserving such a lien, is the legal and entire owner, till the lien is discharged by payment. *Bradeen* v. *Brooks*, 22 Maine, 463; *Oakes* v. *Moore*, 24 Maine, 214.

All our lumbering operations are conducted with reference to this principle. When the plaintiffs stipulated for a *lien*, they used the word in the sense in which it was understood by the community, and with reference to the construction which had been given it by the Courts. The first point which we make, is this — that the license given by the plaintiff to McCrillis, was not assignable; that Haynes, who operated upon the town by virtue of a contract with McCrillis, was a trespasser, and that the rights of the plaintiffs are not to be affected by any of his acts. The plaintiffs were the owners of the town and conveyed it to McCrillis conditionally. The condition was never performed.

If no license to cut timber had been given to McCrillis, what would have been the rights of the parties before the Court, supposing all the other facts to be as they are now presented. McCrillis would have had no right to cut timber, and of course no person under his authority, or by his direction. Haynes would have been a trespasser, and so would the laborers whom he had employed. It is idle to pretend that in such a case the laborers could have a lien upon the logs, on account of their personal services.

*McCrillis* had authority to cut timber, but the question is, what right had *Haynes?* He claims to have had authority through McCrillis, but McCrillis had no power to grant him authority. It is well known that the success of a lumbering

operation depends in an especial degree upon the skill and prudence with which it is conducted.

When the plaintiffs gave to McCrillis a license to cut timber, they believed that he would manage the operation with skill and fidelity, and that whatever lumber was cut would be faithfully accounted for.

Now, the plaintiffs say, and this is their argument, *that* Haynes did not manage the operation with skill or fidelity; *that* he hired many more men than were needed; *that* the men did not do half the labor which they ought to have done; *that* a large portion of the logs have been secreted, and *that* the wages of the men amount to more than the value of the logs.

Was, then, the business given by the plaintiffs to McCrillis assignable? If not, then Haynes acquired by his contract with McCrillis, no rights as against these plaintiffs, and he, and all the men who worked under him must be considered trespassers. In *Emerson* v. *Fiske*, 6 Maine, 200, it was held that a license to cut timber on the land of the grantor is not assignable.

The defendant may contend that, in legal effect, the timber was cut by McCrillis, Haynes acting only as his agent. We deny that Haynes can in any manner be considered the agent of McCrillis. He entered upon the trust by virtue of a contract with McCrillis, agreeing to cut and remove timber at a certain price per thousand; McCrillis surrenders to him the sole control and management of the operation. The arrangement is liable to all the objections which have been mentioned. If the license given by McCrillis to Haynes be good, then the plaintiffs' property is to be holden for the acts of Haynes, though he may have conducted imprudently, or dishonestly.

When the plaintiffs gave authority to cut timber, they were well acquainted with the law which gives to laborers upon logs a lien on them, and they did not contemplate that any person but McCrillis, was to have the right to create claims upon their property. By giving him authority to cut timber, they of course gave him authority to hire men, and in that way, perhaps to create liens upon their property, but they

did not intend to give that authority to *any one else.* It was a *personal trust* not to *be transferred.*

When McCrillis attempted to give such a license, he exceeded his authority.

The plaintiffs regard Haynes and all who worked under him as trespassers.

By looking at the account of William McMaster, one of the men who sued, we find he claims to recover, not only for his labor on the logs, but also for " expenses, getting into the woods, $6,67." It is a rule of law that, where one unites a claim that is privileged with one that is not, he places them both on the same footing, and waives or abandons all pretensions as a privileged creditor. Now when McMaster claims to recover by one judgment, for labor upon logs, and for expenses of getting into the woods, he joins a demand that is privileged with one that is not.

At all events, then, the defendant is liable for the logs sold on McMaster's writ.

There were various other writs against Haynes, but in all of them, except that of McMaster, the plaintiffs claim only for labor.

Admitting that Haynes was rightfully upon the land, the plaintiffs contend that at the time the attachments were made, the logs were not in such a situation that the liens of the laborers could be secured. The logs were at one time the property of these plaintiffs, and it is incumbent upon the defendant to show by what authority they were taken from them. He alleges that the plaintiffs in the several suits referred to, had a lien upon them by reason of their labor, but he fails to prove that the identical logs sold, were the logs upon which any of said plaintiffs performed labor. There were four teams at work, all upon separate and distinct portions of the tract. Each team had a distinct crew of men attached to it, and they hauled to separate and different landings. If we go to the common law to ascertain the meaning of the word lien, we find it laid down that it is used to signify the right of detention which artisans and others, who have bestowed labor upon

an article, or done some act in reference to it, have, until re-imbursed for their expenditures and labor bestowed upon it. *Oakes* v. *Moore*, 24 Maine, 219. In 2 Kent's Com. 634, it is said that a general lien is the right to retain the property of another for a general balance of accounts, but a particular lien is a right to retain it only for a charge on account of labor employed, or expenditures bestowed upon the *identical* property detained.

Now it was perceived by the Legislature that it would be impossible for laborers upon logs to retain possession of them until paid for their services, and it was therefore provided that the lien might be secured and perfected by attachment. It is fair to presume that in every respect, except the retaining of possession, the Legislature intended to give the word the same meaning which it had at common law; to wit, a claim upon an article on account of labor or expenditures bestowed upon it.

The language of the statute is, that any person who shall labor at cutting, hauling or driving masts, spars or other lumber, shall have a lien on all logs and lumber which he may aid in cutting, hauling and driving as aforesaid for the amount stipulated to be paid for his personal services. It will be borne in mind, that the claims of the laborers in this case are all for cutting and hauling. None claim for driving. Can a laborer, who worked in one team only be said to have aided in cutting and hauling all the lumber which was cut and hauled by the other teams? The laborers are undertaking to deprive the plaintiffs of their lien, not by virtue of any contract, but by a statute of the State, a statute which takes the property of one man to pay the debt of another. For these reasons the statute should be construed strictly. No laborers had a lien on any logs, other than those cut and hauled by the team in which he worked.

If it was practicable for the laborers to secure their claims by attaching the logs, *upon which they actually worked*, they cannot be permitted to resort to other logs.

In order to show to what difficulties and absurdities we

should be brought by allowing the construction which the defendant contends for, we will suppose that Haynes had received a permit to cut logs upon a township adjoining the one owned by the plaintiffs ; that he had hired men for that purpose, and that all the logs cut had been marked with the same mark, although hauled to different landings.   The townships being owned by different persons, it cannot be pretended for a moment that the logs cut on one town could be holden to pay the expenses of labor in cutting logs on the other town. Suppose both towns had been owned by the same persons, and Haynes had been authorized to cut spruce logs upon one, and pine logs upon the other, and that the expenses of labor in cutting the spruce logs exceeded in amount the value of the logs. Will it be pretended that the men who worked upon the spruce logs, would have a right to satisfy their claims out of the pine logs on which they did not work ?

It may be said, that the logs were all marked with the same mark, and that it is impossible for each man to identify the logs on which he worked.   But that is not the fault of the plaintiffs, they remain the owners of the logs until their stumpage or lien is paid and discharged, they had nothing to do with the operation, with the cutting or marking.   If the laborers had taken proper precautions, there would have been no difficulty in identifying the logs and securing their claims, they could have put a private mark upon the logs, or they could have attached before the logs were driven to the boom, and while they remained at their landings.   The doctrine of confusion of goods has no application to such a case as this. The lien attaches only to the property on which the work was done, and cannot be transferred to any other property.

But there is a broader view which may be taken of the whole question, one which goes to the very gist of the whole matter, and which we think fatal to the defendant's case. How far does the laborer's lien extend, and whose rights shall be affected by it?   There is a construction to be given to the statute which will in some way limit it.   It is not to be taken in the extended sense in which it reads.   It cannot be

pretended, that if the laborers are trespassers or the person under whom they work is a trespasser, the statute would give them a lien. Some limitation then is to be made to the general words of the statute, and what shall that limitation be ? The sale by the plaintiffs was conditional. It was to be a sale, *provided* McCrillis paid his notes at maturity, which was not done.

Our construction of the law is, that the laborer's lien extends only to *such* interest in the logs, as the operator acquires by the conditional sale to him.

The laborers claim to hold the logs because they have bestowed labor upon them, and increased their value. So far as the plaintiffs are concerned, their value is not increased; they sold the logs for what they were worth standing and growing. For any increased value in cutting and transporting the timber to market, the laborers are justly entitled to it. The price at which the timber was sold should first be paid, and whatever the balance may be, should be holden to the laborers. The law was intended for the protection of the laborers against all claims created by the operator in cutting and removing the timber, but it was not intended to take the property of one man to pay the debt of another. It was not intended to secure the laborers their pay, by doing injustice to other individuals.

*A. W. Paine,* for the defendant.

Tenney, J. — The condition in the conveyance from the plaintiffs to McCrillis, is subsequent; the fee in the land, therefore vested in the grantee on the delivery of the deeds. There has been no re-entry for the forfeiture, on account of the breach of the condition; and so far as our consideration is demanded in this case, we must regard the forfeiture as waived for the present, and the title to remain as it was at the time of the conveyance. 1 Shep. Touchst. 118, and seq.; 4 Kent's Com. Lecture 56.

The deeds convey the land to the grantee, his heirs and *assigns.* They give the right to cut timber, with no limita-

tion as to the person who may do it, subject to a lien thereon, for the payment of five dollars for every thousand feet cut, board measure. The right to dispose of the timber by the grantee subject to this lien, to be taken off by himself, or by others whom he may employ under a contract, such as that made by him, and James and Alvin Haynes, must be conferred, when the grantee has the power to convey the entire estate by the terms of the deed, subject to the same lien. The case is unlike that of *Emerson* v. *Fiske & al.* 6 Greenl. 200, where the title of the land was not intended to be conveyed, and the entire ownership of the timber continued in Emerson, who had given those, under whom the defendants claimed it, the right to cut it exclusively for him.

The timber may be considered as having been lawfully removed from the land, and driven to the boom, by virtue of a contract, which the plaintiffs had fully authorised. At the time of the conveyance, the statute of 1848, chap. 72, was in force. That secured a lien upon all logs, masts, spars, and other lumber, in favor of those who aided in cutting, hauling or driving them for their personal services.

This lien is analogous to liens upon vessels and upon buildings, in favor of laborers, who have been employed in their construction. It takes away none of the rights of the owner, nor the one interested therein, by a lien or otherwise, any further than is necessary for the security of those who are presumed to have added something to its value, equal to the expense, at least, incurred. It is in the power of the owner, who wishes to dispose of such property, to guard against any loss from the lien which may exist afterwards upon it by the authority of the statute, by taking other security for his purchase money, besides retaining an interest in the property itself. The statute in its prospective operation, and in this case it can have no other, is no abridgment of the rights of the citizen, secured to him, by the constitution of the State, in Art 1, sec. 1, of " acquiring, possessing and protecting property." It subjects the property to the payment of debts, which the owner has directly or indirectly caused or authorized, in its

improvement, under a knowledge, that the property is so charged. In principle it in no respect differs from the lien at common law, in favor of mechanics, who have bestowed labor upon the article which it attaches. The statute provides for its existence in cases where the possession is not supposed to be in the one, to be benefitted by the lien.

It was evidently intended by the legislature, that the lien of laborers was not to be postponed to that of other individuals. Their claim commences immediately upon the performance of services in converting standing trees into logs, masts, spars, and other lumber, where it may be enforced in a manner, which shall be speedy, simple and effectual. The statute protects the laborer in his earnings, without obliging him to follow the property which he has aided in making more valuable, after it has been taken into possession of those persons, who may have attempted to sustain a prior lien ; and frees him from exposure to loss, arising from the tardy and uncertain process, of attempting to secure any interest, remaining after such liens have been discharged, when it may have passed from the scene of his labors, and so changed that its identity can no longer be traced. The exception in favor of the Commonwealth of Massachusetts, and the State of Maine, in the statute, confirms this view. The lien, which is preferred to that of the laborers, is what was expected to be proper in the sales of land, for the security of the purchase money. And the statute will not admit of the construction, that there is to be a still farther exception in favor of other grantors, who may attempt to provide the same kind of lien, when the plain language itself, expressly forbids it.

But it is insisted, that the lien under the statute, cannot extend to lumber, to which the one claiming the lien contributed nothing, in cutting, hauling or driving the same. The mischievous results of a more liberal application of the provision, pointed out by counsel in certain cases, are very apparent, and we cannot suppose for a moment that the lumber, which was taken and sold in satisfaction of the debts, in favor of the laborers represented by the defendant, was in each case exclu-

sively that which the creditor aided in cutting and hauling. The case finds, that the logs cut and hauled by the several companies of men, could not be distinguished by the defendant. But in the passage of the logs from the forest to the boom, they were so intermingled that the labors of the distinct companies were not distinguishable. There were no artificial badges upon the several parcels of logs, so that those cut by one company could be separated from those cut by another; and although the logs cut by some of the companies were of different sizes and qualities from those cut by others, it was manifestly a case of the confusion of goods, which may take place in reference to lumber. *Hazletine* v. *Stackwell*, 30 Maine 237.

Assuming that the counsel for the plaintiffs are correct in their proposition that the lien of each laborer is confined to the lumber, which he aided in removing from the land, it may be proper to ascertain who are to be regarded in this action as responsible for the intermixture; and what was the character of the acts, which caused it.

The plaintiffs, their grantee, and those, whom the latter employed to cut, haul and drive the logs, knew constructively at least, that those who should bestow labor upon them in these operations would have a lien thereon for the value of their personal services. They were all affected by that knowledge after the logs were cut and hauled. The men who were employed merely as operatives, had no authority to put thereon their own distinguishing marks, or to interfere in directing the mode in which they should be removed from the landings and driven to the boom. And their claim ought not to be taken away by any of the parties, including the plaintiffs, who were interested in the lumber, by an intermixture, which the laborers had no power to prevent. The plaintiffs conveyed the land, and gave authority for the removal of the timber. Every process in cutting, hauling and driving the logs was in the prosecution of their original intention, when they made the conveyance.

They were in their hands, or in the hands of those who

had been employed by virtue of their contract, through all the different stages of their progress from standing trees, till they were indiscriminately turned into the streams, and the river, and driven to the boom.  Every thing done to the timber from the first to the last of these operations, was just what the plaintiffs expected would be done, and in doing which there was no violation of any contract, which had been made with them touching the ultimate object, or the mode by which it was brought about.  The logs were constructively in their possession for the purpose of preserving their own lien thereon, subject to the statute lien of the laborers, if the latter existed at the time of the attachments by the defendant's deputy, and had so been from the time they were cut.  *Bradeen* v. *Brooks*, 22 Maine, 463.

Is it then for the plaintiffs to claim to hold the logs free from the laborers' lien ?  Before they can do this successfully, would not justice demand, that they should show, that they had done all in their power to preserve it ; that it should be proved, that they had stipulated that nothing should take place, which should impair it, instead of claiming a discharge of it, a forfeiture of the rights, under the statute, by at least their own want of care ?  If the lien was lost, it is manifest, that it was done by the omission to perform some duty in some of the agents employed in driving the logs, which the plaintiffs should have required to be done.

We cannot doubt, that the plaintiffs must be treated as having so far caused the mixture of the logs, that had the confusion been done wrongfully, the lien of the laborers is not extinguished.  This brings us to the other inquiry, what was the character of the acts, which caused the confusion ?  Was the intermixture brought about by fraud, by accident, or by carelessness or inadvertence ?

In view of all the facts in the case, it would be too much to say, the confusion originated in fraud.  There is a manifest want of all the material elements of fraud in the plaintiffs and in all those, who had any agency in driving the logs and causing the mixture.  On the other hand, it cannot be said,

that the intermingling was the fruit of accident. The plaintiffs, their grantee, and those who contracted to cut, haul and drive the logs under him, must have known fully their situation. The parties to the deeds, knew or were bound to know all the claims existing upon them, and the propriety of such a course as would continue them in their full vigor. There may have been a want of knowledge of the nature of the laborer's claim, and its extent, but this ignorance of the law cannot excuse the plaintiffs, so that they can invoke it for their own benefit at the expense of those, who rendered the services. No care was taken to keep separate the logs hauled by the different companies of laborers respectively, by the agents employed, after they were placed upon the landings, and no marks were put upon them for the purpose of enabling them to make the proper division. It has the character of an intermixture produced by negligence or inadvertence.

What is the rule applicable to a confusion, caused by negligence or inadvertence, when the separation cannot be made, and the whole mass is different in quality from those parcels, which produced it? Judge Story, in his Treatise on Bailments, sect. 40, deduces the rule, from the authorities, in these words:—" If the mixture is undistinguishable, and a new ingredient is formed, not capable of a just appreciation and division, according to the original rights of each, then the party, who occasions the wrongful mixture, must bear the whole loss." In the case of *Lipton* v. *White*, 15 Vesey, 432, Lord Chancellor Eldon says, " The defendant White, as far as he is concerned is involved in it simply in consequence of his own undertaking. No misconduct or fraud is imputed to him. He is culpable, not morally, but only for having applied too little attention to his own interest." The condition of the plaintiffs in some respects, is not essentially unlike that of White in the case referred to. White had undertaken, that articles belonging to the plaintiff and the other party should be kept separate. His agent and lessees omitted to do it. A mixture took place of articles of different qualities ; and no account was kept of those which came from the plaintiff, and not

being distinguishable, the plaintiff was held entitled to the whole. In the case at bar, no moral wrong was imputable to the plaintiffs; but such an inattention to the lien of the laborers is shown, that they are so far responsible for the negligence, which was the cause of the confusion, that they cannot claim to hold the logs discharged of the statute lien for their own benefit, and turn over to persons, who may be irresponsible, those individuals, who performed the services and for whose protection the provision of the law was made.

In this case, the several parcels of logs, cut by the different companies of workmen, all belonged to the plaintiffs, so far as the lien in their favor extended, subject to the statute lien of those workmen. Was it then a mixture of property of different values, belonging to different individuals? Each parcel of logs was the property of each laborer, who had rendered personal service in their removal from the land, so long as his claim was in full force, and nothing but the lien excepted from the operation of the provision of the statute, could supersede it. As between such laborer and the plaintiffs, all the other parcels, according to the facts of the case, were the property of the latter. If the confusion had been caused by carelessness, for which they are responsible, and each laborer failed in consequence to distinguish the logs to which the lien originally attached; and the logs were of different qualities, so that he could not obtain those of similar value to his own, he would be entitled to sufficient to satisfy his claim, from the whole mass produced by the confusion. From the facts agreed, the defendant as the representative of the workmen who caused the attachments to be made, is not responsible in this action to the plaintiffs.

In the case of *William McMaster* v. *James and Alvin Haynes*, he appears by the documents in the case to claim for services rendered for them, in cutting and hauling logs; he also claims the sum of six dollars and thirty-seven cents, for the payment of expenses in getting into the woods. Without the statute, the laborers would have no right by attachment upon the lumber, in satisfaction of their services against those

who did not own it.   The lien is restricted to the " personal services" of the one, who claims the benefit of it, and cannot extend to the charge last referred to.

It does not appear, that any distinction was made in the sale of logs to satisfy that part of the claim which was for personal services, and the other portion of it.   But it appears from the statement of facts, that the suit is still pending, and upon leave granted, the writ may be amended by striking out the charge to which the lien does not attach, and no objection will exist to the application of so much of the proceeds of the sale, as will satisfy the residue, if he should obtain judgment therefor.   *Gilbert* v. *Hudson*, 4 Greenl. 345.

*Plaintiffs nonsuit.*