MERRIGAN, RESPONDENT, *v.* ENGLISH ET AL., APPELLANTS.

MECHANIC'S LIEN — *Subcontractor.* — Under section 1370, fifth division, Compiled Statutes, a subcontractor has a direct lien for the reasonable value of his labor and materials.

SAME — *Construction of statutes.* — The repeal of section 1387 of the Compiled Statutes, providing that every contractor, subcontractor . . . . having charge, in whole or in part, of the building shall be deemed the agent of the owner, did not repeal the direct lien given to subcontractors by section 1370. Section 1370 of the Compiled Statutes, giving a subcontractor a direct lien, is not unconstitutional as forfeiting the owner's property to persons with whom he never contracted.

PLEADING — *Answer* — *Conclusions of law.* — Where the answer does not deny any of the facts upon which plaintiff's claim for a lien is based, but denies indebtedness to plaintiff, and that plaintiff had any lien ; *held*, that the denials were conclusions of law, and no issues of fact were raised by the pleadings.

HOMESTEAD — *Exemption.* — A homestead is subject to the lien of a mechanic for material, as well as labor, where the material is the object of the labor for which he claims his lien.

PRIORITY OF LIEN OVER MORTGAGE. — Where the work for which a lien is filed was done by a subcontractor subsequent to the filing of a mortgage, such lien takes precedence of the mortgage, and dates from the commencement of the work by the original contractor.   (Following the case of *Davis* v. *Bilsland,* 18 Wall. 659.)

*Appeal from First Judicial District, Lewis and Clarke County.*

A motion for judgment on the pleadings was granted by BLAKE, C. J.

Statement of facts, prepared by the judge delivering the opinion of the court.

The plaintiff, John Merrigan, brought this action to foreclose a mechanic's lien. The complaint shows the following facts, omitting all technical matter of pleading : The defendant, Lydia J. English, was and is the owner of the premises which the plaintiff seeks to make subject to his lien, and prior to July 20, 1888, entered into a contract with the defendant Crawford, who thereby agreed to erect a building upon the premises referred to; that Crawford commenced work under said contract on the twentieth day of July, 1888, and himself entered into a contract with the plaintiff Merrigan, who thereby agreed "to do all the plastering to be done in said building, and to set a mantel therein, and to furnish the plaster and cement necessary therefor," the consideration for said contract being the sum of two hundred and seventy-eight dollars; that the said plaintiff "completed said contract, and did and performed said work and labor in the plastering of said building, and the setting of said mantel, and the furnishing of said plaster and cement, as above specified, on the twenty-seventh day of October, 1888;" that he (the plaintiff) has been paid for said work the sum of fifty-five dollars, and no more; that said work, etc., was reasonably worth the said sum of two hundred and seventy-eight dollars; that the plaintiff commenced work under his contract upon the seventh day of September, 1888, and completed said work on the twenty-seventh day of October, 1888; that the defendant, the Home Building and Loan

Association, claim a lien upon said premises, which lien, if any, is by mortgage, and is subject to the lien of the plaintiff; and that the plaintiff, on the thirty-first day of October, 1888, filed his notice of lien, setting forth in detail the facts of said filing. Then follows the prayer. The above will show all the facts material in the case, because it is not claimed that there has been a defect in pleading, the issues being sharply drawn upon the points given below, and which go directly to the plaintiff's cause of action. To this complaint a demurrer was interposed in behalf of the defendants, English and the Home Building and Loan Association. The demurrer was overruled, and each of said defendants last named filed a separate answer. The answer of the defendant English is, in effect, as follows: It denies that she is indebted to the plaintiff in any sum; denies that Crawford was her agent, or had any authority to make any contract with the plaintiff for her or in her name; denies that the account set forth in the complaint, or the lien based thereon, constitutes any lien upon the premises; denies that the plaintiff has acquired any lien upon said premises by reason of the facts set forth in the complaint; and, as affirmative defense, alleges and sets forth the contract made by her with the defendant Crawford, and that by said contract the said Crawford agreed to do and perform the work described in the complaint; and that the premises in question are, and were, at all times mentioned in the complaint, the homestead of the defendant, who is the head of a family. The answer of the defendant corporation, in addition to the matter set forth in the answer of the defendant English, pleads as a defense a bond and mortgage for the sum of one thousand dollars, which mortgage is a lien upon the premises in question, and was duly recorded in the proper office on the first day of September, 1889. The plaintiff moved for judgment upon the pleadings. The motion was granted. Judgment was entered for the plaintiff. From this judgment, and from the order overruling the demurrer, the answering defendants appealed. Many points were raised in the court below. Those considered in this court are those which are mentioned in the brief of appellants, and they are as follows: *First*, that the plaintiff is a subcontractor, and has no lien; *second*, that the premises are the homestead of the defendant English, and are therefore not subject to the lien

of the plaintiff, because they are exempt from any lien except that of a laborer or mechanic (see §§ 322, 323, subd. 1, Comp. Stats.); *third*, that the plaintiff's lien, if any, is subject to the mortgage of the defendant corporation; *fourth*, that there were certain denials in the answers which raised issues of fact.

*Massena Bullard*, for Appellants.

A lien being "exclusively the creature of the statute, and deriving its existence only from positive enactment," and our statute failing to provide for any lien in favor of subcontractors, it follows that the lien in this case cannot be sustained, and the demurrer to the amended complaint should have been sustained. (Phillips on Mechanics' Liens, §§ 9, 15, 18; *Chapin* v. *Persee*, 79 Am. Dec. note, 269, and authorities cited; Overton on Liens, §§ 552, 554; *Pike* v. *Irwin*, 1 Sand. 14.)

The statute of Montana does not make any provision for a subcontractor's lien: he is not mentioned in the section providing for liens. (Fifth div. Comp. Stats. § 1370.) That section 1370 applies only to persons who have contracted with the owner or proprietor, and not to subcontractors, is further evident from the fact that section 1372 of the same statute provides as follows: "It shall be the duty of every person and all persons, except as has been provided for subcontractors, who wish to avail himself or themselves of the benefit of this chapter, to file with the county recorder," etc. This is part of the old statute in force at a time when liens were provided for subcontractors. The provisions relating to subcontractors have been repealed; they are left without a lien.

By section 1387, fifth division, Compiled Statutes of Montana, the contractor was made the agent of the owner; but this section was, prior to the inception of any right of the respondent, so amended as to repeal that provision. The statute therefore does not make the contractor an agent of the owner, and no such agency exists except by statute. (Extra Session Laws of 1887, § 5, p. 72; *Deardorff* v. *Everhartt*, 74 Mo. 37.)

It is alleged and not denied by plaintiff, that the premises which plaintiff seeks to subject to his lien constitute the homestead of the defendant. The statutes of this Territory provide

that the homestead "shall not be subject to forced sale on execution, or any other final process from a court;" and then further provide as follows: "Such exemptions shall not affect any laborer's or mechanic's lien, or extend to any mortgage thereon lawfully obtained." (First div. §§ 322, 323.) Respondent may insist that the term "mechanic's lien" in section 323 is used in its legal meaning, and that the legal meaning includes liens of material-men. We concede, that if the language of the statute was that the homestead exemption "shall not affect any mechanic's lien," and made mention of no other class of liens, then it might be with some plausibility claimed that all liens were intended to be included; but when the statute uses the terms "laborer's lien" or "mechanic's lien," it must be held to refer to the particular classes of liens named, and none other. (*Richards* v. *Shear*, 70 Cal. 187; *Walsh* v. *McMenomy*, 74 Cal. 356.)

*George F. Shelton*, and *A. C. Botkin*, for Respondent.

There is no distinction drawn between contractors and sub-contractors under the Mechanic's Lien Law. There are two modes adopted by the mechanic's lien statutes of different States for securing the benefits of the statutes to subcontractors and others employed by the principal contractor. (Jones on Liens, § 1285.) The distinction between the two methods is well understood. The object of the legislature in the law of March 9, 1887, was to change, from the system of "subrogation through notice to the owner," to that of a "direct and absolute lien upon the property," in so far as it affected the rights and privileges of subcontractors. The new enactment repealed the provisions of the old law requiring notice to the owner, and section 1370 provides that every mechanic, etc., shall have a lien. This provision protects the subcontractor. (Phillips on Mechanics' Liens, § 58; *Atwood* v. *Williams*, 40 Me. 409; *Quale* v. *Moon*, 48 Cal. 478.)

The reference in section 1372 of the Lien Law to sub-contractors is evidently one of those errors that creep into compilations of laws that have not been carefully revised by competent persons.

It will be observed that the authorities cited by the appellants

in their brief are from those States in which the system of "subrogation through notice to owner." prevails, and where subcontractors have no absolute lien. Mr. Jones, in his work on Liens, gives a list of the States that give, by statute, a direct and absolute lien to the subcontractor, and in that list he includes Montana, and quotes the law of March 9, 1887. (2 Jones on Liens, § 1304, n. 6; also § 1212.)

Under statutes which give to subcontractors a direct lien, the amount for which the property may be charged is not limited by the amount that may be due from the owner to the contractor, nor does it in any way depend upon the state of the account between them. (*Colter* v. *Frese*, 45 Ind. 96; *Merritt* v. *Pearson*, 58 Ind. 385; *Crawfordsville* v. *Johnson*, 51 Ind. 397; *Andis* v. *Davis*, 63 Ind. 17; *Delahay* v. *Goldie*, 17 Kan. 263; *Clough* v. *McDonald*, 18 Kan. 114; *Shellabarger* v. *Thayer*, 15 Kan. 619; *Atwood* v. *Williams*, 40 Me. 409; *Sodini* v. *Winter*, 32 Md. 130; *Treusch* v. *Shryock*, 51 Md. 162, 163; *Parker* v. *Bell*, 7 Gray, 429; *Laird* v. *Moonan*, 32 Minn. 358; *Ballou* v. *Black*, 21 Neb. 131; *Foster* v. *Dohle*, 17 Neb. 631; *Marrener* v. *Paxton*, 17 Neb. 634; *Lonkey* v. *Cook*, 15 Nev. 58; *Hunter* v. *Truckee Lodge*, 14 Nev. 24; *Carson Opera House Assoc.* v. *Miller*, 15 Nev. 327; *White* v. *Miller*, 18 Pa. St. 52.)

The constitutionality of similar statutes is well established. (*Laird* v. *Moonan*, 32 Minn. 358; *Bohn* v. *McCarthy*, 29 Minn. 23; *O'Niel* v. *St. Olaf's School*, 26 Minn. 329; 2 Jones on Liens, § 1304.) As to the question of agency, see Phillips on Mechanics' Liens, § 79, p. 143; *Morrison* v. *Hancock*, 40 Mo. 564; *Deardorff* v. *Everhartt*, 74 Mo. 37; *Blake* v. *Pitcher*, 46 Md. 454; 2 Jones on Liens, § 1306. The question of homestead cannot be successfully raised against the plaintiff, so as to defeat his lien. (*Murray* v. *Rapley*, 30 Ark. 568; *Edwards* v. *Edwards*, 24 Ohio St. 402.) The lien of respondent has priority over the mortgages of the appellant, the Home Building and Loan Association. (2 Jones on Liens, § 1480; Phillips on Mechanics' Liens, §§ 226, 228; *American Fire Ins. Co.* v. *Pringle*, 2 Serg. & R. 138; *Hall* v. *Hinckley*, 32 Wis. 362; *Davis* v. *Alvord*, 94 U. S. 545; *Meyer* v. *Delaware R. R. Co.* 100 U. S. 454; *Brooks* v. *Burlington & S. W. R. R. Co.* 101 U. S. 443; *Meyer* v. *Egbert*, 101 U. S. 728; *Batchelder* v. *Rand*, 117 Mass. 176.)

BACH, J.—The tendency of land-owners to enter into contracts at a figure so low that the original contractor could make no profit unless he refused to pay his employees, has led to the enactment of laws for the protection of wage earners. There are two systems generally adopted throughout the United States—one known as the New York sytem; the other as the Pennsylvania system. The former gives to the subcontractor a lien by-way of subrogation, as it is termed by the text-writers, which is accomplished by a notice given to the owner by the subcontractor, which notice specifies the probable value of the services to be performed, or of the materials to be furnished, and the owner is thereupon entitled to withhold from the contractor money due to the latter to such an amount as will meet the demand. These are the general features of the New York system, and such was the system prevailing in this Territory prior to March, 1887, as will appear from an inspection of sections 820 to 824, inclusive, of the Revised Statutes. The other, or Pennsylvania system, gives a direct lien to the laborer or subcontractor, either by an agency created by the statute, or by an implied agency vested in the original contractor. An interesting discussion of this subject will be found in the very able opinion of the learned Chief Justice Beatty upon the petition for rehearing, in the case of *Hunter* v. *Truckee Lodge*, 14 Nev. 24–33, et seq. The case is one which bears directly upon all the points raised by the demurrer in this action, and especially upon the most prominent distinction between the two systems. The distinction referred to is this: Under the New York system the subcontractor cannot recover more than is due from the owner to the contractor; that is to say, he is bound by the original contract; while under the other system the original contract, or payment to the original contractor, is no defense to a claim of a subcontractor.

In order to fully understand the lien law of this Territory in force at this time, and at the time this action was commenced, we must study the law prior to the Act of March, 1887, and the effect and purpose of that act. The old law will be found in sections 820 to 848 of the Revised Statutes of 1879. Section 820 gave to "every mechanic, builder, lumberman, artisan, workman, laborer, or other person who shall do or perform any work

or labor upon, or furnish any material, machinery, or fixtures
for, any building," etc., a lien "upon such building," etc., "to
secure the payment of such work or labor done, or material, ma-
chinery, or fixtures furnished." Sections 821 and 822 prescribe
certain rules with which a subcontractor must comply in order
to avail himself of the lien given to him by section 820; and
they refer more particularly to a notice which the subcontractor
was required to give to the builder before performing any labor
or furnishing any material, and to the manner of filing the notice
of lien, and the time within which such filing must be made.
Section 823 gave the owner of the building the right to with-
hold from the contractor sufficient money to meet such claims of
subcontractors as had been duly filed; and it made the owner
the surety of the contractor to that extent.

Thus it will be seen the New York system, or the system
generally known as that of "equitable subrogation," was the
law regulating the liens of mechanics in this Territory prior to
the Act of March, 1887. Section 824 is not material to this
discussion. It provided that the notices required by sections
821 and 822 might be served by the sheriff or constable. Sec-
tion 825 contained the law regulating the filing of such notice
of lien by any person other than a subcontractor. By the Act
of March 9, 1887, section 820 was slightly amended, and as
amended will be found in section 1370 of the Compiled Statutes.
The amendment referred to is quite immaterial as far as this
case is concerned. The same act amended section 821, and then
repealed sections 821, 822, 823, and 824; which sections, it will
be remembered, were those containing the regulations which
applied specifically to subcontractors. Undoubtedly, it was
rather inartistic to amend section 821, and then repeal it. The
repeal of the old section was effected by the amendment thereof,
because the amendment provided that "section 821 shall read
as follows," etc., and inasmuch as section 821 was a law apply-
ing to a particular class, and 825 the rule applying generally,
it would have been more logical to repeal 821 without any
attempt to make it a general rule, and then so to amend section
825 that it might contain the general provision in terms agree-
able to the legislative will. However, there is no difference in
the result; for section 821 repealed by implication section 825

as far as that section conflicted with the new law, and the repeal to the extent indicated was accomplished by the Act of March, 1887, which in direct terms repealed all laws and parts of laws in conflict with the provisions of that act. Section 821 will be found in section 1371 of the Compiled Statutes, and section 825 will be found in section 1372 of the same volume. Returning to the law as it existed prior to the amendment of March, 1887, it will be observed that section 820 was intended to give, and did give, to every person performing work and labor, or furnishing materials, etc., a lien for the same. The words of the section are broad enough for that purpose. Sections 821 to 824 further prove it, for they provide what a subcontractor must do to "avail himself of the benefits of this chapter;" and section 845 provides that "all persons . . . . shall be considered subcontractors . . . . except such as have contracts with the owner." The lien, then, was given to subcontractors, as well as to contractors, by section 820, which was not materially changed by the Act of March, 1887; and that lien still exists, and is found in section 1370 of the Compiled Statutes. And the only effect of the amendment was to relieve the subcontractor of notifying the owner of his intention to furnish the material or labor for which he might thereafter claim a lien; and this change was accomplished by the express repeal of those provisions contained in sections 821 to 824, Revised Statutes, both inclusive. The only change made, therefore, by the amendments contained in the Act of March, 1887, was the rejection of the New York system, and the substitution of the Pennsylvania system, or system of direct liens in favor of subcontractors. The Act of March, 1887, contained one more provision of interest, which will be found in section 1387 of the Compiled Statutes, and by force of which "every contractor, architect, subcontractor, . . . . or other person having charge of the construction, repair, or alteration, in whole or in part, of the aforesaid building, . . . . shall be deemed the agent of such owner or proprietor." In the extra session of the legislature in 1887, on September 14th of that year, this power of agency was repealed, owing, no doubt, to the fact that contractors had taken advantage of the law, and had sublet contracts at absurdly high figures under this power of agency. The repeal of section 1387, however, does not repeal the lien

given by section 1370. The lien provided for is a general lien, given to all mentioned in the section. It is the same lien as was provided in section 820, which, as we have seen, included subcontractors as well as contractors; and the only change is this, that instead of a direct lien for the contract price, the subcontractor now has a direct lien for the reasonable value of his services.

We are of the opinion that the laws of this Territory do give to the subcontractor a lien. But it is urged that the law so construed is unconstitutional, more particularly so because the contractor is no longer the agent of the owner since the repeal of that section which made him the agent. There is very little difference between an agency created by a statute and an implied agency. The owner of real estate, who makes a contract with another for the erection of a building thereon, knows that the contractor cannot do, and does not contemplate doing, the work himself. He knows that others will help to perform the contract. He knows the law which gives to such workmen a lien for their services; and he therefore makes the contract with the full knowledge of the implied agency, and of his liability. He obtains the benefit of the labor, because the improvements increase the value of his land; and by exacting a proper bond from the principal contractor he can fully protect himself from double liability. We are of the opinion that the law is neither unconstitutional nor unjust. Whether or not such a law is wise, is a question for the legislature. It may be, as was urged in argument, that such a law tends to discourage building, and that it deprives the poor laborer from accepting contracts because of his inability to furnish such bonds as may be required by the land-owner; but these are matters for legislative wisdom to consider, not for judicial interpretation. Such a law has been sustained as constitutional, either directly or indirectly, in the following cases : *Parker* v. *Bell*, 7 Gray, 429 ; *Laird* v. *Moonan*, 32 Minn. 358; *Spofford* v. *True*, 33 Me. 283; *Atwood* v. *Williams*, 40 Me. 409; *Colter* v. *Frese*, 45 Ind. 96–103; *White* v. *Miller*, 18 Pa. St. 52, in which case Chief Justice Gibson delivered the opinion of the court.

A few extracts from the authorities will show the theory upon which such a law is sustained. "The constitutional validity of

statutes securing liens to subcontractors, and others furnishing labor or materials, irrespective of the state of the account between the owner and the contractor, is well established, and it is established upon the ground that such statutes annex the lien as an incident to the contract of the owner with the contractor; such contract being the evidence of the authority of the contractor to charge the owner's property with liabilities incurred by him in performing his contract." (2 Jones on Liens, § 1304.) "It subjects the property to the payment of debts which the owner has directly or indirectly caused or authorized in its improvement, under a knowledge that the property is so charged. In principle, it in no respect differs from the lien at common law in favor of mechanics who have bestowed labor upon the article to which it attaches. The statute provides for its existence in cases where the possession is not supposed to be in the one to be benefited by the lien." (Tenney, J., in *Spofford* v. *True*, 33 Me. 291, 292.) These citations and authorities dispose of another point raised by the appellants, who claim that the rights of the plaintiff are limited by the rights of the contractor. The authorities cited by the appellants are cases under the New York system, but do not apply to a law where the lien of the subcontractor is a direct lien. In addition to the authorities already cited, see *Hunter* v. *Truckee Lodge*, 14 Nev. 24, and more particularly in the opinion upon a petition for a rehearing, page 33.

We are now to consider the claim of the appellants that the answers raised issues of fact. The denial of indebtedness was a conclusion of law. (See *Higgins* v. *Germaine*, 1 Mont. 230; *Power* v. *Gum*, 6 Mont. 5.) The denial that the plaintiff had any lien was a conclusion of law. It was raised by the demurrer in the court below, and the legality of the lien has been sustained in this opinion. The facts upon which plaintiff bases his claim of lien were not denied. The denial that Crawford was the agent of plaintiff was not material. Such agency was not alleged in the complaint, and under our system of liens was not a necessary allegation. The complaint did allege the contract between Crawford and the defendant English; the subcontract between Crawford and the plaintiff; the performance of the subcontract by the plaintiff; the reasonable value of the services and materials furnished, which value must control (see 2 Jones

on Liens, § 1309) the non-payment of a portion of the sum thus due; and the filing of the lien. These are the facts upon which the plaintiff's lien is based, and the answer does not deny any one of them.

The next point is the claim of homestead exemption. Section 322, page 147, Compiled Statutes, contains the law exempting homesteads from forced sale " on execution or any other final process from a court." Section 323 provides that such exemption " shall not affect any laborer's or mechanic's lien." It is claimed by the appellant — *First,* that plaintiff is not a laborer or mechanic; *second,* that, even in case he is to be considered a laborer or mechanic, so much of his lien as is for materials cannot be made the subject of a lien upon a homestead. No one can doubt but that a plasterer is a laborer; and scarcely one will hesitate to admit that, in common parlance, a plasterer is a skilled laborer, and that a skilled laborer is a mechanic. Such is the common understanding of the words. The technical definition will lead to the same conclusion. Webster defines a mechanic to be " a workman or laborer other than agricultural; . . . . one skilled or employed in shaping and uniting materials, as wood, metal, etc., into any kind of structure, machine, or other object, requiring the use of tools or instruments." The case of *Parker* v. *Bell,* 7 Gray, 429, is directly in point. The Massachusetts law gave a lien to " any person who shall actually perform labor." The plaintiffs were plasterers. The complaint so alleged, and contained the statement that in the capacity of plasterers they "actually performed labor." The learned judge says: " If these allegations are true, they [the plaintiffs] become entitled to a lien upon the house; . . . . for they thus show themselves to have conformed to all the terms of the statute by force of which such a claim is to be established." In this case the complaint alleges that the plaintiff " did and performed said work and labor in plastering said building and the setting of said mantel." This allegation, being admitted, is by itself sufficient to sustain the plaintiff's claim that as a laborer he is entitled to a lien. But it is urged as the second point under this question, that the claim is in part for labor, and in part for material, and that the claim for material is not an exception to the homestead exemption. Appellants cite as conclusive authority, *Richards* v.

*Shear,* 70 Cal. 187, and *Walsh* v. *McMenomy,* 74 Cal. 356, claiming that we are bound by those cases. We think not, because it has been decided in this court that the homestead law of this Territory was not taken from California (see *Lindley* v. *Davis,* 7 Mont. 206), and because those cases had not been decided when the homestead law was adopted, and because they are not in point. In each of the cases cited the court treated the lien as a lien for material alone. In the case first cited the lien, as a matter of fact, was for material only. We do not hold that a material-man has such a lien as will be valid against a homestead. That is not the question before us. All that we are called upon to decide is the extent of the lien of a mechanic or laborer; and we think that the terms of section 1370 give to a laborer or mechanic a lien for the materials furnished by him, as well as for his labor, especially when the material is the object of the labor for which he claims his lien. In fact, in this case, it would be impossible to separate the value of the labor from the value of the material; for the plaster, as well as the mantel, was the result of the plaintiff's labor, the value of each was almost entirely the result of that labor, and the material composing each was comparatively valueless until it had received the impress of his labor.

The remaining point is the claim of the defendant corporation that plaintiff's lien upon the land is subsequent to the defendant's mortgage. It is admitted that the mortgage was filed after Crawford commenced work under the contract to erect the building, and before the plaintiff commenced the work for which the lien is filed. The plaintiff claims that his lien is valid as against any mortgage filed since Crawford commenced his work. This is denied by the appellant. Section 1374 provides that the liens mentioned in section 1370 "shall be prior to and have precedence over any mortgage . . . . made subsequent to the commencement of work on any contract for the erection of such building." In California and other States the statutes on this subject read thus: "Subsequent to the commencement of the work." It is apparent that in such States the lien is not prior to those mortgages which are recorded prior to the commencement of the very work for which the lien is filed. But those authorities are not in point. *Davis* v. *Bilsland,* 18 Wall. 659,

is a case appealed from this court. The work upon the building was commenced May 1, 1869, the mortgage was filed on June 9, 1869, and the work for which the lien was filed was commenced in July, 1869. It was held that the lien dated from May 1st, the date of the commencement of the building, and was prior to the mortgage. The statute in force at that time differs slightly from section 1374 above quoted. The former reads thus: "Subsequent to the commencement of said building." But there is no difference in the meaning. When Crawford commenced to erect the building, work was commenced on a contract for the erection of the building; in other words, that was "the commencement of the building." Such a construction of the statute as is stated in the case last cited is not unjust. The mortgagee knew the law. He knew, or could have known, that work had been commenced on a contract for the erection of a building. He knew that persons other than the original contractor would perform work and labor which would improve the property upon which, as security, he advanced the money. He knew of the lien which such subcontractor could acquire. To hold otherwise would be to destroy the very purpose of this law, which was to give to the subcontractor a direct lien for the value of his labor; because it is evident, if the contrary was held, such liens would be made worse than a farce by so-called blanket mortgages filed the day after the improvement was commenced.

We find no error in the record. The judgment is affirmed with costs.

DE WOLFE, J., and LIDDELL, J., concur.