DUIGNAN ET AL., RESPONDENTS, *v.* MONTANA CLUB
ET AL., APPELLANTS.

[Submitted April 3, 1895. Decided May 13, 1895.]

MECHANICS' LIEN—*Subcontractors in third degree.*—Under section 1391, Fifth Division Compiled Statutes, providing that "all persons furnishing things or doing work as provided for by this Chapter, shall be considered subcontractors," the lien given to contractors by the mechanics' lien law of this state, (Compiled Statutes, 1887,) extends also to subcontractors to the third, or any degree. (*Merrigan* v. *English*, 9 Mont. 113, approved.)

SAME—*Subcontractors—Protection to owner.*—Under the mechanics' lien law of this state Compiled Statutes, 1887,) the burden is upon the owner to protect himself from the liens of subcontractors with whom he has no direct contractual relations, which may be done by withholding from the contractor such part of the contract price as will protect the property from liens for work or material until the time for filing such liens has expired, or by taking indemnity against such liens.

SAME—*Sufficiency of complaint on appeal.*—A complaint in a lien for foreclosure which does not allege that the materials furnished were used in the building, but which states that the material was furnished to be used in the building, and the notice of lien, which is made a part of the complaint, sets forth the fact that the material was used in the construction of the building, is sufficient on appeal where no objection to the form of the pleading was made in that court. (*Hershfield* v. *Aiken*, 3 Mont. 442; *Murphy* v. *Phelps*, 12 Mont. 581, cited.)

SAME—*Nonjoinder of defendants—Waiver.*—In a suit by a subcontractor to foreclose a lien, failure to make the original contractor defendant is not a defect which can be raised for the first time on appeal. (*Parchen* v. *Peck*, 2 Mont. 571, cited.)

APPEAL—*Defective judgment—Costs.*—A judgment erroneous in form will be remanded at respondents' costs, where they have insisted on appeal that the judgment as entered was correct.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION to foreclose mechanics' lien. Judgment was rendered for plaintiffs below by BUCK, J. Affirmed and remanded for entry of proper judgment.

*Massena Bullard* and *Thomas C. Bach*, for Appellants.

*E. A. Carlton*, for Respondents.

DEWITT, J.—This action was brought to obtain a judgment for materials furnished one of the defendants, and to foreclose a lien against the clubhouse of the defendant, the Montana Club. There was a judgment for the plaintiffs. The defendant,

the Montana Club, appeals. The appeal is here upon the judgment roll only.

The Montana Club contracted with D. P. Wortman to erect the building. Wortman contracted with William Harrison, and William Harrison with the Helena Co-operative Granite & Sandstone Company, which company contracted with the plaintiffs for supplying certain stone. The plaintiffs are therefore subcontractors in the third degree.

The appellant contends that the lien law of this state does not give a lien to a subcontractor beyond the first degree; that is, beyond the person subcontracting with him who is the original contractor with the owner.

It was decided in *Merrigan* v. *English*, 9 Mont. 113, (a decision with which we are satisfied) that a subcontractor has a lien in this state. We refer to that case for a careful and accurate analysis of the history of our legislation upon the subject of mechanics' liens. The fact for decision, however, in that case, was only the lien of a first subcontractor. We observe that decisions and text writers have construed that case as holding that subcontractors of all degrees have a lien. While there may be language in the opinion indicating that view, the facts of the case do not extend the decision that far.

We will start in this consideration with the declaration of law, as clearly set forth in *Merrigan* v. *English*, that the first subcontractor has a lien. The inquiry, then, is, does our law also extend the lien to contractors under the first subcontractor. Appellant's counsel has made a very able argument against that position. We will not restate the history and the law as found in *Merrigan* v. *English*, but simply refer to that opinion.

Counsel calls our attention to the fact, as noted in that case, and as discussed generally in the decisions and by text writers, that two systems of mechanics' liens are adopted in the different states of the Union,—one, the New York or subrogation system; the other, the Pennsylvania or direct lien system. The system of this state up to 1887 was that of New York.

Since the legislation of that year it has been that of Pennsylvania. See the subject fully developed in *Merrigan* v. *English.* Counsel then points out that in states holding the New York system a subcontractor of a subcontractor had no lien, citing *Kirby* v. *McGarry,* 16 Wis. 70; *Harbeck* v. *Southwell,* 18 Wis. 439; *Wood* v. *Donaldson,* 17 Wend. 550; *Turcott* v. *Hall,* 8 Ala. 525; *Stephens* v. *Stock-Yard Co.,* 29 Ohio St. 227; *Rothgerber* v. *Dupuy.* 64 Ill. 452; *Berkowsky* v. *Sable,* 43 Ill. App. 411.

Counsel next argues that, on the reasoning of the decisions in these states, it should also be held that there was no lien to a subcontractor of a subcontractor in this state prior to the law of 1887. But, under both the old law and the new, there is a lien, at least to the first subcontractor. (*Merrigan* v. *English supra.*) It is also held in *Merrigan* v. *English* that the change made in the law in 1887, in discarding the New York system and adopting the Pennsylvania system, did not change the classes of persons to whom a lien was given in this state, but changed only the method by which such persons could secure their liens.

But the question now arises, was there not a lien to a subcontractor of a subcontractor under the old law? In the cases which counsel cites from states practicing under the New York system, he does not point out, nor do we find, a statute similar to section 845 of our law prior to 1887, which is the same as section 1391 of the law since that date. That section is as follows: "All persons furnishing things, or doing work, as provided for by this chapter, shall be considered subcontractors, except such as have therefor contracts directly with the owner or proprietor, his agent or trustee." (Comp. St. div. 5, § 1391.) The cases which counsel cites do not construe such a section as this. Those decisions reason upon the applicability of their own statutes, as they find them. There is absent from the decisions of those states a direct statutory declaration as to who subcontractors are; but such declaration we find in our stutute, as just quoted. It being conceded under the authority of *Merrigan* v. *English* that a subcontractor had a lien under the

old law, as well as the new, who is a subcontractor? The statute answers. While it is held by the authorities that, to give a subcontractor of a subcontractor a lien, the declaration of such intention must be very plain and specific, we are of opinion that the declaration of our statute is perfectly clear, and that its meaning cannot be doubted. "All persons furnishing things or doing work" is the language. A subcontractor in the second, third, or any degree is one of the persons "furnishing things or doing work."

Looking further at this statute, the language is "furnishing things, or doing work, as provided for by this chapter." As provided for by this chapter is: "Every mechanic, builder, lumberman, artisan, workman, laborer or other person who shall do or perform any work or labor upon, or furnish any material, machinery or fixtures for any building, erection, bridge, flume, canal, ditch, mining claim, quartz lode, ranch, city or town lots, or other improvements upon land, or for repairing the same, upon complying with the provisions of this chapter, shall have for his work or labor done, or material, machinery, or fixtures furnished, a lien upon such building, bridge, flume, canal, ditch, mining claim, quartz lode, ranch, city or town lots, or other improvements, to secure the payment of such work or labor done, or material, machinery, or fixtures furnished." (Rev. St. 1879, § 820.) Therefore all persons furnishing things or doing work as provided by that chapter are subcontractors. A subcontractor of a subcontractor may furnish things or do work as provided for in the chapter. Therefore a subcontractor of a subcontractor is included by the statute (section 845) as simply a subcontractor.

At this point we notice that counsel for appellants argue, with some reason, that, if the subcontractor of a subcontractor had a lien under the old law, other sections of the chapter on liens seem to be addressed peculiarly to the method of securing and enforcing liens by original contractors and first subcontractors. Whatever force there may be in this suggestion, we are of opinion that it cannot offset the separate and plain and specific definition in the statute of who a subcontractor is. In

fact, we cannot intelligently read section 845 of the old law or section 1391 of the new law in any other manner than a declaration that all persons who furnish the things or do the work are to be considered subcontractors. If we give the construction which counsel contends for to this section, then it would read : "All persons furnishing things or doing work, except second and third and later subcontractors, shall be considered subcontractors, except, again, the original contractor with the owner." But all persons furnishing things, etc., except the second and third subcontractors and the original contractor or contractors, need no definition to define them, for they are first subcontractors without definition. Counsel's interpretation of the section would simply reduce it to reading that subcontractors are subcontractors. We cannot consent to this construction. We cannot hold any other opinion but that under the old law a lien was given to subcontractors of lower degree than the first. It is then important to note that this section 845 was carried into the new laws enacted in 1887, and appears in the identical language as section 1391 of the Compiled Statutes of 1887.

It may be pertinent to observe that section 1391 was enacted by our legislature after many decisions had been made by courts interpreting lien laws to the effect that, to extend the lien to subcontractors inferior to the first, there must be a plain statutory declaration. It would seem that our legislature undertook to make such plain declaration. As noted above, *Merrigan* v. *English* held that the change made by the law of 1887 was simply from one method of lien to another, and not a change in the classes of persons to whom the lien was given. Therefore, it seems to be clear that subcontractors later than the first are now entitled to a lien under the laws of this state. In this respect there was no error in the district court.

As to the practicable application of such statutes as ours, we note the following from 2 Jones on Liens, § 1305: "Under such statutes, the burden is upon the owner to protect himself from the liens that may be incurred by the person with whom he contracts. It thus becomes incumbent upon him to see that

the contractor is financially responsible for the contracts he may make in the prosecution of the work.   His rights are affected only so far as is necessary for the security of those who are presumed to have added something to the value of the owner's property.   The owner may always protect himself by withholding from the contractor such part of the contract price as will be sufficient to protect the property from all liens for work or materials.   That the owner has paid the contractor before the expiration of the time for filing liens by subcontractors is no defense to such liens if they are filed in due time. The subcontractor is bound to give no other notice of his claim than that required by the lien law.''

We also append the following remarks from the case of *Manufacturing Co.* v. *Falls,* 90 Tenn. 466, 16 S. W. 1045: '' It is true that a lien is provided for persons with whom the owner is supposed to have no direct contractual relations, but that fact alone does not invalidate the act; for the owner must be held to a knowledge of the existing law on the subject, and to the presumption that he employed the original contractor, and gave out his work with reference to that law.   The right of lien to subcontractors and material men is, by operation of law, incorporated into and made a part of the owner's contract, as much as if expressly included and written therein. He contracts about a subject in which the law declares certain advantages to all persons concerned, whether by direct contract with him or by the employment of his contractor. The law declares that a lien shall exist in favor of the subcontractor and material man in certain contingencies; hence the owner who makes the contemplated contract cannot justly complain of the legal result, especially when he receives the benefit of the labor and material of those for whom the lien is provided, and who often have no other means of compensation. The enforcement of this law does not necessarily result in loss to the owner, nor take from him something for nothing.   The second criticism, involving the proposition that the owner *may* be compelled to pay the subcontractor and material man after he has already paid the original contractor, is true literally,

but it is not true in the sense that it ascribes to the statute a *purpose* of enforcing double payment. In other words, it is a fact that an owner who pays the original contractor within thirty days after the completion of the work, building, or machinery, may, upon notice given within that period, be forced to pay the subcontractor and material man whom the original contractor unjustly fails or refuses to pay; but double payment does not follow as a necessary legal consequence in any case. In every instance the owner may fully protect himself by withholding the whole or a sufficiency of the price agreed upon from the original contractor until after the expiration of the thirty days, or he may see to it that the subcontractor and material man are paid as the work progresses, or he may indemnify himself by bond, as prescribed in the third section of this act. It may be truthfully said that it will be inconvenient for the owner to adopt any one of these expedients; yet inconvenience of parties affected is never allowed to defeat a statute. The constitutionality of the act of the legislature cannot be successfully impeached upon the ground that it involves the citizen in mere inconvenience. Much more than inconvenience is involved for the subcontractor and material man. Without the protection of such a law, they would be constantly exposed to the danger of an entire loss of labor and material. Hence, as a matter of pure wisdom and justice, there could be but little difficulty in choosing between the situation with such a law and that which would exist without it. A policy that would involve one class of citizens in mere inconvenience for the pecuniary safety of another class is far more wise and just than that which would suffer loss to the latter class rather than entail inconvenience on the former.''

But, notwithstanding these views, we should be inclined to say, if we belonged to the legislative instead of the judicial department of this state, that § 1391 of our lien law, which we have considered, is not wise legislation.

In Phillips on Mechanics' Liens, in discussing the matter of extending liens to subcontractors of subcontractors (in the absence of a direct statute, such as ours, accomplishing such re-

sult), the author says, citing authorities : " There is no policy that would extend its construction to this latter class.   If such were the case, the multiplication of liens would become an intolerable nuisance,  by allowing distant subcontractors to thus incumber property.   It would be intolerable, not only to persons having houses built, but to mechanics themselves; for no prudent man would, with such a law, venture to employ any but rich mechanics about his building, without getting security against liens, which they might multiply with so much facility. How distant, then, may the claimant stand from the contract between the owner and builder before there is no lien ?   Certainly there must be a limit somewhere.   The carpenter may undertake with the builder for finishing all his kind of work, including all the nails, screws, etc.   Can he transmit the right of lien to all dealers and artisans in these kinds of business ?  If he can, then the lien rights against any house may be entirely indefinite.   The bricklayer, the stonemason, etc., may multiply them in the same way, until the costs of liens may exceed the value of the house.   What, then, is the limit of these lien rights ?   *   *   *   This would soon be felt as intolerable.  To increase the risks materially, as to extend them to journeymen, would be seriously to interfere with the growth and improvement of our cities and towns, by interposing obstacles to the march of meritorious enterprise, and thus eventually to injure the workman himself.   For the introduction of such a rule a distinct manifestation of legislative will is necessary.   It is far better for all parties to leave the journeyman operative to the security he most commonly relies on,—the personal responsibility of his employer." (§ 60.)

The policy of the legislation in this state has been strongly towards the protection of laboring men, but it is a serious question whether the law in the matter which we are considering has not overreached its object, and injured instead of benefiting the laborer.   There is much force in the following remarks on this subject, found in Phillips on Mechanics' Liens: " It would be unsafe in that case for the principal contractor to make any payments or advances to the subcontractors who

had undertaken to do particular portions of the work, until their several jobs were completed, and they had furnished to him conclusive evidence that all the journeymen and laborers employed by them, respectively, had been paid in full; and the various subcontractors would have to raise money some other way to pay such journeymen and laborers, or those who actually did the work would have to wait until the subcontract was fulfilled, so that they and the subcontractor could be paid off by the original contractor at the same time, the probable effect of which would be to suspend the payments of the daily pittance which the journeyman frequently wants for the immediate use of himself and his family, or to compel the great mass of industrious and enterprising mechanics in our cities, who have as yet acquired no capital and but little credit, to become the mere journeymen of a few wealthy contractors, by placing them in a situation by which it would be impossible for them to obtain subcontracts for a part of the work.'' (Section 49.) But with the enactment of laws we have not to do. We commend the subject to the wisdom of the legislature.

Appellants contend that the complaint does not allege that the materials furnished went into and were used in the building. But the complaint, in the body thereof, alleges that the material was furnished to be used in the building, and the notice of lien, which is made part of the complaint, sets forth the fact that the material was used in the construction of the building. The defendants answered this complaint, and made no issue upon this matter, and thereupon went to trial. They, therefore, cannot raise that question now. (*Hershfield* v. *Aiken*, 3 Mont. 442; *Murphy* v. *Phelps*, 12 Mont. 531.)

The same answer may be made to appellants' objection that the complaint does not show at what time the materials were furnished. This is fully shown by the notice of lien.

Again, appellants contend that the complaint does not sustain the judgment, because Wortman was not made a party defendant. But there was no demurrer to the complaint on this ground, and defendants went to trial without any such objec-

tion.   (Code Civil Procedure § 87; *Parchen* v. *Peck*, 2 Mont. 571.)

The only error that we find in the case is in the judgment, which was prepared by plaintiffs' counsel, and entered.   Almost as far as that document is intelligible it is wrong.   We will not detail its remarkable characteristics, but will set it aside, and remand the case to the district court, with instructions to enter a judgment against the Helena Co-Operative Granite & Sandstone Company for the sums found to be due, as set forth in the present judgment, and the further judgment as to the lien as provided in section 1383 et seq., Compiled Statutes.

As respondents have insisted that the judgment as entered is correct, it is ordered that the costs be taxed against the respondents.

*Remanded.*

PEMBERTON, C. J., concurs.   HUNT, J., deeming himself disqualified, did not sit in this case.