ALVORD, respondent, *v.* HENDRIE, appellant.

STATUTORY CONSTRUCTION — *act securing mechanics' liens constitutional.* The act of the legislative assembly, approved January 12, 1872 (Cod. Sts., chapter 40), secures liens to mechanics for their labor, and confers upon the district court chancery jurisdiction to determine the rights and priorities of the liens of mechanics and mortgagees. The 6th section of the Organic Act of the Territory provides " that the legislative power of the Terri-tory shall extend to all rightful subjects of legislation consistent with the constitution of the United States, and the provisions of this act." *Held,* that said act of the legislative assembly is constitutional. *Held,* also, that said act secures a lien to a mechanic for work which has not been performed under any contract.

MECHANICS' LIENS UPON QUARTZ LODE AND MILL. A. made a contract with H. to perform labor at the rate of $2,500 per annum, and work one-half of his time upon H.'s quartz lode, and the other half upon H.'s mill, in which the quartz taken from the lode was to be worked. *Held,* that A. can secure payment for said labor by filing and enforcing in the same action one lien upon the lode and mill, or two separate liens upon said property.

SAME — *time for filing lien by A. for said labor.* The time during which A. was to perform said labor for H. was not stated in said contract, and A. worked under it 21 months. The 6th section of said act of the legislative assembly makes it the duty of a person, wishing to avail himself of the said act, to file with the county recorder, within sixty days after said labor shall have been performed, an account of his demand. *Held,* that A. was not required to file said account within sixty days after the end of the first year to secure a lien for the sum then due from H. under said contract.

*Appeal from Third District, Lewis and Clarke County.*

THIS action was tried by WADE, J. Davis, one of the defendants, was interested in the property, and appealed from the judgment, which gave priority to the claim of Alvord against Hendrie over that of Davis. Hendrie did not appeal.

CHUMASERO & CHADWICK, for appellant, Davis.

Hendrie was not the owner or proprietor of the property in controversy, and had no interest therein. It must be shown that a defendant has an interest, which can be sold, before a court of equity will decree a sale. There is no proof to show that Hendrie was the owner.

The complaint is insufficient. It appears upon its face that the court had no jurisdiction in law or equity. It sets up two distinct causes of action, and asks for liens upon two separate estates. Houck on Liens, § 139; *Rathbun* v. *Hayford*, 5 Allen, 408.

Respondent was hired for one year only. His right to a lien expired sixty days after the end of the year, unless notice was filed and suit brought, as required by the statute. Cod. Sts. 510, § 6; 513, § 20. This was not done.

The evidence does not show that any work was performed by respondent, which entitled him to a lien under the statute. Respondent should prove the labor done upon each piece of property. The court could not ascertain it from the testimony. Houck on Liens, § 139; Cod. Sts., 509, § 1. A lien could only extend to the work actually done on the lode or mill. *Edgar* v. *Salisbury*, 17 Mo. 271.

Respondent claimed more than was due him, and his lien is, therefore, void. Houck on Liens, § 210; *Lynch* v. *Cronan*, 6 Gray, 532; *Underwood* v. *Walcott*, 3 Allen, 569.

Respondent claims a lien for working as an amalgamator in the mill. The statute gives no lien for this labor. The liens of Davis are prior to those of respondent, and were in existence before the second year of respondent's employment, and before any notice of lien was filed.

G. G. SYMES and SHOBER & LOWRY, for respondent.

Respondent performed work equally upon the mill and lode, according to his contract with Hendrie. The notice of lien was filed within sixty days after the completion of the labor, and this action was commenced within six months after the filing of the notice:

Mechanics' liens attach from the time of the commencement of

the building, and have priority over all incumbrances made thereafter. Sts. 1864, 334, § 8; *Dubois, adm'r,* v. *Wilson's Trustee,* 21 Mo. 214; Houck on Liens, §§ 50, 141; *Mochon* v. *Sullivan,* 1 Mon. 470; *Mason* v. *Germaine,* id. 263.

Courts construe the law favorably to mechanics' liens. Houck on Liens, §§ 66, 68. The same law of liens is applicable to mechanics and laborers working on mines. *Nolan* v. *Lovelock,* 1 Mon. 224; Sts. 1868, 80, § 1.

SERVIS, J. This was an action commenced under the mechanics' lien law of Montana Territory to enforce a lien for work and labor alleged to have been performed by the plaintiff and respondent for the defendant, Hendrie, upon a certain quartz mine and quartz mill.

The allegations of the pleadings in the case are, in substance, as follows:

That on the 1st day of August, 1869, the plaintiff, Alvord, entered into a contract with the defendant, Hendrie, whereby the plaintiff, being a mechanic, agreed to work for the defendant, for the sum of $2,500 per annum, in and about the opening and developing of a certain quartz mine, of which the said defendant was the owner of thirteen-twentieths, known as the Whitlatch Union Quartz Mine or Lode, situate in Lewis and Clarke county, Montana Territory, and in about the building, erection and repairing of buildings and machinery upon the premises, known as a twenty-stamp quartz mill in Oro-Fino gulch, a short distance from said mine, all being more fully described in said pleadings as being owned by said Hendrie, one-half of the time of the plaintiff to be devoted to each of said work; that he commenced said work on the said 1st day of August, 1869, and so worked continuously thereafter until the 1st day of May, 1871; that on the 25th day of June, 1871, he settled with Hendrie, and an account therefor was stated between them, when there was found due plaintiff from said Hendrie, after deducting sundry credits and payments, the sum of $3,787.50, which, it was agreed between them, should be a lien upon the mine and quartz mill in equal proportions; that on the 26th day of June, 1871, he perfected two separate liens upon said property, according to law, and, by

way of two separate causes of action in this proceeding, seeks to enforce the same, alleging therein that the defendants, Kelly and Davis, claim to have some interest or lien upon said property, who appear and answer separately.

Kelly, for answer, substantially denies the allegations of the plaintiff's complaint, averring the transaction between Alvord and Hendrie to be fraudulent and void; that the court had no jurisdiction over the subject of the action, and could not render a judgment *in personam* and *in rem* in the same proceeding; and, by way of cross-demand, claims a prior lien on said Whitlatch Lode for work and labor to the amount of $235, to recover which he then had suit pending, and prayed judgment of dismissal.

Davis answered, denying substantially as did Kelly, and averring his interest in the property, viz., that of two mortgages executed by Hendrie, one of date of September 17, 1870, given to secure two promissory notes, one for $2,000, dated February 15, 1869, the other dated June 7, 1869, for $9,444, payable in six months; the other mortgage dated September 10, 1868, to secure $5,400. Also a mortgage, executed by Hendrie to Norval Harrison, October 2, 1869, to secure the payment of $4,490; also another mortgage, executed by said Hendrie and one E. B. Hendrie to W. B. Evarts to secure $1,725, which last mortgages had been duly assigned to Davis, and suits were then pending to foreclose the same.

Upon these pleadings, including plaintiff's replication, the parties proceeded to trial to the court. The plaintiff, to maintain the issue on his part, offered evidence and proofs, among which were the recorded notices required by the lien law; conveyance from J. W. Whitlatch to Charles Hendrie; articles of agreement between Whitlatch, Tutt and others; also record of other deeds and mortgages, to all of which the defendant Davis objected, which was overruled and excepted to, and plaintiff rested.

The defendant Davis alone introduced evidence to maintain the issue on his part, and rested.

The court below made the following findings, viz.: That there is due plaintiff from defendant Hendrie the sum of $3,787.50, with interest from June 25, 1871; that of this amount $1,893.75 is a valid lien upon the mill, and $1,893.75 is a valid lien upon

the mine; that the same became such liens on the 1st day of August, 1869; that the defendant Davis' mortgage of September 10, 1868, is a prior lien upon the mine; that defendant Kelly has a lien upon the mine for the sum of $235, with interest, next in priority to that of plaintiff; that the lien second in priority upon the mine is that of plaintiff for $1,893.75; that the defendant Davis, by virtue of the Harrison mortgage, has a lien upon the mill next in priority to plaintiff, and that his lien thereon by virtue of the Evarts mortgage is next in priority; that said Davis also has a valid lien upon the mill by virtue of his mortgage of date of September 17, 1870, and is next in priority to the lien of Kelly, and next in priority to the Evarts mortgage, and rendered its decree accordingly, and for the sale of defendant Hendrie's interest in the property in question, for the payment in the order of priority so found by the court.

To all of which the defendant Davis objected, and duly appeals to this court, claiming as *grounds for reversal*, that under the pleadings in the case the court had no jurisdiction over the subject of the action; that it could not be ascertained therefrom whether the action was one at law or in equity; that if it was one in equity, the relief sought by way of personal judgment and a decree for the sale of the incumbered property, to satisfy the respective liens, could not be granted; that the evidence did not warrant the findings of the court, and especially as to the ownership of the property by Hendrie, the amount of labor performed upon each species of property, and that the court erred in giving priority to plaintiff over appellant.

This proceeding was commenced under and pursuant to the mechanics' lien law, passed by the legislative assembly of this Territory in 1864, amended in 1868, and re-enacted in the codified laws in January, 1872, and is purely and expressly a statutory proceeding. Under this law it is provided that every person who shall perform work upon, or furnish material, machinery or fixtures for, any building, erection, bridge, flume, canal, ditch, mining claim, quartz lode, ranche, city or town lots, or other improvement upon land, or for repairing the same, upon complying with the provision of the act, shall have for the same a lien thereon to secure the payment for the same, to the extent of all the right,

title or interest owned therein by the owner *or* proprietor of the same; and such lien shall have preference upon the *structure, etc.,* over any prior lien or mortgage on the *land* where the same is erected. And the act further provides the *mode* of proceeding to enforce the same: that the proceeding shall be commenced in the district court; that the pleadings, practice, process and other proceedings shall be as in ordinary civil actions, except that the petition (complaint) shall allege facts necessary to secure a lien; shall describe the property charged therewith; and all persons interested in the property may be made parties to the action.

The *court* shall then ascertain, by a fair trial, in the usual way, the amount of indebtedness for which the lien is established, and render judgment for the same and for costs of suit; and if the property is insufficient to pay the same, then the residue be collected as upon ordinary executions.

All the proceedings in this case having, as we think, sufficiently conformed to the provisions of this act, the question of the jurisdiction of the court in the premises depends upon the right of the legislative assembly so to enact.

We are of the opinion that this was a rightful subject of legislation, that by it no jurisdiction was taken from the court inhibited by the Organic Act of this Territory. The security or lien created by it was, it is true, in derogation of the common law, but similar to that of nearly all of the States and Territories of the United States, and always recognized as a rightful subject of legislation. The kind or character of jurisdiction provided for the enforcement of the lien, was that of chancery; the chancery side of the court was appealed to, without it the appellant would not have been a proper party to the proceeding, and his rights, as well as the rights of the plaintiff and others, might have been prejudiced. And we are unable to see wherein the rights of any of the parties have, or could have, been prejudiced by reason of the jurisdiction taken, or in the mode of the proceedings held in this case.

It is, however, claimed by appellant that the evidence, as shown by the decree, did not warrant the findings and conclusions of the court below, as to the ownership of the property by Hendrie; as to the amount of labor performed on the mill and on the mine in question; and that the lien of plaintiff was not perfected ac-

cording to law, in that the notices of lien were not filed within sixty days from and after the end of the first year of work by plaintiff.

We have examined the evidence presented by the record in thi, case, and have no difficulty in finding that the evidence was sufficient to establish the ownership of the property in question, as claimed, in the defendant Hendrie. It does not appear that any other person has or claims any other or greater interest, except it be the answering defendants, who claim under and from the same character and title.

If any doubt existed as to this finding of ownership, we think a reference to the twenty-first section of the act herein alluded to would at once settle the doubt, for it is therein provided, " Every person, including all *cestuis que trust*, for whose immediate use, enjoyment, or benefit, any building, erection or improvement shall be made, shall be included by the word " owner," or " proprietor," under this act, not excepting such as may be minors over the age of eighteen years, or married women."

In relation to the sufficiency of the proof as to the amount and character of the work performed generally by the plaintiff, and of the amount and character performed upon each of the kinds of property, we are of the opinion that the proof shows that the plaintiff fully complied with the terms of his contract with Hendrie. It is true, the evidence shows that he performed some small amount of work that might not be the subject of a lien under the statute, such as amalgamating, but to what amount it is not shown ; and we may well infer, from the proof, that it did not exceed the amount that had been paid him before filing his lien. There is also proof tending to show that the plaintiff did not, and could not, from the character of the business, have worked *all* the time for which he has charged. All this may be, in fact, true; but how does that deprive him of a lien for the *amount* (value) of work done and performed ? No proof was introduced even tending to show that what work the plaintiff, in fact, did do, was not worth at the rate of $2,500 per year. And when the plaintiff ceased working he settled with Hendrie for the same, stating an account as it existed between them, finding a balance due plaintiff of $3,787.50. And there was not shown

to have been any fraud or collusion between plaintiff and Hendrie. And although their *agreement* then, apportioning the lien equally upon the mill and the mine, could not make the same so in law, no more could such an agreement defeat the law.

The contract between the parties was, that the plaintiff was to work for the defendant at $2,500 per annum, one-half the time on the mill, the other half on the mine; exactly *how* this time was to be divided is not stated or shown. Neither is it shown that the exact amount and value of labor was not, in fact, performed as apportioned by the court below upon each species of property. And however material or immaterial the failure to establish these things may be, we are of opinion that, under the contract between the plaintiff and Hendrie, and the facts as shown as to the labor performed, that the whole amount thereof, as found due by their settlement, was, in law, a valid lien upon all the property, both mine and mill property, of which the defendant had interest in; and although he proceeded to enforce the same as upon two separate causes of action joined in one, yet, nevertheless, it was, in law, but one transaction, under one and the same contract, undivided and indivisible, and, therefore, constituted but one cause of action; and the separating them into two liens and two causes of action joined in one is not erroneous, especially as no objection was taken by demurrer, motion or otherwise, either before or on the trial. It is also objected, that because the plaintiff did not perfect his lien within sixty days from the end of the first year of labor, that the same is thereby lost for that year.

Our statute creating or giving this kind of lien is unlike any other statute we are acquainted with, except that of California, Idaho and Arizona. Ours and theirs do not make it necessary that any *contract* should exist for the performance of the labor, etc., in order to entitle the party to a lien for such labor, etc. It simply provides, that every person who shall do and perform labor upon any property of another, by complying with the conditions therein specified, shall have a lien, etc. Nowhere in the whole act is there any reference to a *contract* between the parties. Now the conditions specified to be complied with are, that, within sixty days *from the time the work shall have been performed,*

the party claiming such lien shall do certain things, viz:, file an account, etc., with the county recorder. These things, we find, were duly done by the plaintiff in this case. But if we were in doubt as to this, we need but look to the whole of the facts in the case. The contract between the parties was, that the plaintiff was to work upon these two kinds of property for the consideration of $2,500 per annum ; *i. e.*, by the year, or at that rate per year; not for *one* year. The time was indefinite; it might extend to many years ; and, indeed, from the character and nature of the business, we might well infer that it might extend to many years, if they could agree. At all events, there was no new contract made at the end of the first year, but the work continued until the 1st day of May, 1871, when it ceased, and was then settled for as of one continuous contract, and that, too, without difference or dispute, or fraud proven.

The decree rendered in this case may have gone further than it ought. Indeed, we cannot well see how, under the present law, it could have gone so far as to foreclose the rights of persons not parties to the suit ; although, under some statutes, such authority seems to be given ; yet we are unable to find wherein the court has transcended its jurisdiction or power to the detriment or injury of this appellant. And, indeed, the court gave the appellant relief that might well have been refused under his pleadings and prayer for relief.

The judgment and decree of the court below are, therefore, affirmed.

*Judgment affirmed.*

---

NOTE.—The Supreme Court of the United States has passed upon one of the questions referred to in the arguments of counsel and the opinion of the court. In *Davis* v. *Bilsland*, 18 Wall. 661, Mr. Justice BRADLEY says : "The language of the eighth section of the Mechanics' Lien Law of Montana is unambiguous. The liens secured to the mechanics and material-men have precedence over all other incumbrances put upon the property after the commencement of the building. And this is just. Why should a purchaser or lender have the benefit of the labor and materials which go into the property and give it its existence and value ? At all events, the law is clear." — REP.