McINTYRE, Respondent, *v.* MacGINNISS, Appellant.

(No. 2,805.)

(Submitted March 19, 1910. Decided April 2, 1910.)

[108 Pac. 353.]

*Mechanics' Liens—Contiguous Mining Claims—Notice—Account—Sufficiency—New Trial—Premature Service—Waiver.*

New Trial Notice—Premature Notice—Effect.
  1. Service of notice of intention to move for a new trial, made before notice of entry of judgment, is premature and ineffective as a basis of the motion.

Same—Entry of Judgment—Notice—Waiver.
  2. Though a party intending to move for a new trial may waive formal notice of the entry of judgment by instituting his proceedings in support of his motion without it, such waiver may not be imputed to him where he inadvertently proceeds before he may properly do so.

Same—Notice of Appeal—Service—Adverse Party.
  3. Where one of several defendants served his notice of intention to move for a new trial and his notice of appeal upon the only one of his codefendants who had any interest in opposing the relief sought

by the motion and appeal, the service was sufficient as against the objection that all the adverse parties had not been served.

Mechanics' Liens—Mining Claims—Extent.

4. The provision of section 7293, Revised Codes, limiting the operation of a mechanic's lien, does not apply to mining claims; a lien upon such property extends to the whole claim.

Same—Notice—Sufficiency.

5. A notice of lien upon a lode mining claim which failed to mention the claim by name was nevertheless sufficient to indicate the area within which the work was alleged to have been done, where such claim fell entirely within the boundaries of a placer location which had been properly described.

Same—Contiguous Mining Claims—Notice.

6. Notices of mechanics' liens for labor performed on a number of contiguous lode mining claims may properly be prepared upon the theory that the whole group constitutes a single consolidated claim, where such work is reasonably adapted to the development of all the claims.

Same—Who Entitled to Liens.

7. For labor performed in the exploitation and sampling of mining claims—such as in making repairs and alterations, building of roads, cutting of cordwood for fuel, keeping machinery in order, clearing away of debris, and the like, liens may properly be filed.

Same—Notice of Lien—Account—Contents.

8. One desiring to file a mechanic's lien need not classify the character of work done or set out the items of it in the account filed with the notice; all that is required under section 7291, Revised Codes, is an honest statement from which it may be understood what amount is claimed.

Same—Contiguous Mining Claims—Extent of Lien.

9. Where a group of seven mining claims were improved as a consolidated claim, men employed on the enterprise were entitled to a lien on the entire group, and the fact that they limited their liens to only three of the claims did not destroy their right altogether.

Same—Lessees—Liability.

10. Where work on a group of mining claims was done at the instance of lessees, who in part paid therefor, they were personally liable for the amount unpaid, whether they were technically partners or not.

Same—Appeal—Erroneous Judgment—Who may not Complain.

11. A lessee of mining claims upon which a quartz-mill had been erected and in which entire property a bank, also made defendant, claimed an interest, against whom a judgment enforcing mechanics' liens had been properly entered, could not complain because the judgment ordered that in case the proceeds of the sale of his interest were not sufficient to discharge the debt, the entire mill should be sold. The bank, the owner of the other interest, was the only party entitled to complain of this part of the judgment.

(Mr. Justice Smith dissenting in part.)

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by R. B. McIntyre against the Montana Gold Mountain Mining Company and others. From a judgment for plain-

tiff and an order denying his motion for a new trial, defendant John MacGinniss appeals.    Affirmed.

In behalf of Appellant, there was a brief and oral argument by *Mr. John F. Davies.*

*Mr. M. P. Gilchrist* and *Mr. W. D. Kyle,* submitted a brief in behalf of Respondent; oral argument by *Mr. Kyle.*

No particular form of lien statement is required.    All that is necessary is that the language used in the statement must convey and express in an intelligent manner the meaning and intent of the statute.    To hold otherwise would be in effect, in many instances, to defeat a just and equitable claim on mere technicalities.    (*Ford* v. *Springer Land Assn.,* 8 N. M. 37, 41 Pac. 541.)    Nicety of form is not essential.    (*Hagman* v. *Williams,* 88 Cal. 146, 25 Pac. 1111; *Maynard* v. *Ivey,* 21 Nev. 241, 29 Pac. 1090; *Baldwin* v. *Spear Bros.,* 79 Vt. 43, 64 Atl. 235; 2 Jones on Liens, sec. 1391; *Riter* v. *Houston,* 19 Tex. Civ. App. 516, 48 S. W. 758.)    Where a lien notice is offered in evidence for the purpose of establishing the lien, all objections going to its execution are waived by a failure to urge such objections at the time of its offer in evidence, and they will not be considered on appeal.    (*Wheeler* v. *Ralph,* 4 Wash. 617, 30 Pac. 709; *Noll & Thompson* v. *Cumberland,* 112 Tenn. 140, 79 S. W. 380; *Luttrell & Co.* v. *Knoxville Co.,* 119 Tenn. 492, 123 Am. St. Rep. 737, 105 S. W. 565.)

Defendant MacGinniss having been adjudged liable for the debt set out in the lien, the fact that the lien did not describe all the property against which foreclosure thereof was decreed would not affect the validity of the lien as to the property therein described.    (20 Am. & Eng. Ency. of Law, 2d ed., 422; *Culmer* v. *Clift,* 14 Utah, 286, 47 Pac. 85; *Mivelaz* v. *Johnson,* 124 Ky. 251, 124 Am. St. Rep. 398, 98 S. W. 1020, 14 Ann. Cas. 688.)

Where two or more mining claims are operated as a group or whole, as against the party or parties so operating them, a

lien for work done on any one of such claims attaches to all. (*Hamilton* v. *Delhi Mining Co.,* 118 Cal. 148, 50 Pac. 378; *Phillips* v. *Salmon River Co.,* 9 Idaho, 149, 72 Pac. 886; *Idaho Mining & Mill Co.* v. *Davis,* 123 Fed. 396, 59 C. C. A. 200; *Berentz* v. *Belmont Oil Co.,* 148 Cal. 577, 113 Am. St. Rep. 308, 84 Pac. 47; *Williams* v. *Mining Co.,* 102 Cal. 134, 34 Pac. 702, 36 Pac. 388; *Malone* v. *Mining Co.,* 76 Cal. 578, 18 Pac. 772; *Pacific Co.* v. *Irrigation Co.,* 120 Cal. 94, 65 Am. St. Rep. 158, 52 Pac. 136.)

A lien is not defeated by the failure of the description to cover as much property as it might have covered. (20 Am. & Eng. Ency. of Law, 2d ed., 422; *Culmer* v. *Clift,* 14 Utah, 286, 47 Pac. 85; *Mivelaz* v. *Johnson, supra.*)

The following cases are cited in support of the proposition that labor in hauling material used and machinery installed in a mill will support a lien therefor: *In re Hope Mining Co.,* 1 Saw. (U. S.) 710, Fed. Cas. No. 6681, 9 Morr. Min. Rep. 364; *Gould* v. *Wise,* 18 Nev. 253, 3 Pac. 30; Snyder on Mines, sec. 1690; *Kehoe* v. *Hansen,* 8 S. D. 198, 59 Am. St. Rep. 759, 65 N. W. 1075; *Bates Machine Co.* v. *Trenton,* 70 N. J. L. 684, 103 Am. St. Rep. 811, 58 Atl. 935; *Fowler* v. *Pompelly,* 25 Ky. Law Rep. 615, 76 S. W. 173; *Wells* v. *Christian,* 165 Ind. 662, 76 N. E. 518; *Jones* v. *Kruse,* 138 Cal. 613, 72 Pac. 146. The authorities also hold that pipe laying, some work of this character having been done on the property in question, is lienable work. (*O'Neil* v. *Taylor,* 59 W. Va. 370, 53 S. E. 471; *Wells* v. *Christian,* 165 Ind. 662, 76 N. E. 518; 20 Am. & Eng. Ency. of Law, 2d ed., 309.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff to recover of defendants Montana Gold Mountain Mining Company (hereafter referred to as the company), John MacGinniss, B. T. Spaulding and James Breen for services performed by him as a laborer, at their instance and request, between August 1, 1907, and Novem-

ber 1, 1907, and to establish a lien for the amount alleged to be due upon three mining claims, with a mill thereon, situate in Silver Bow county, upon which the labor was performed, and of which the said defendants are alleged to be the owners. Plaintiff also sued as assignee of sixteen other claimants for similar services rendered to the same defendants at various times between August 1, 1907, and December 5, 1907, setting forth these claims in separate counts. The amended complaint, after alleging facts sufficient to support a judgment for the different amounts alleged to be due as upon account, alleges the filing of notices of claim of lien by plaintiff and each of his assignors in conformity with the requirements of the statute. The Silver Bow National Bank (hereafter referred to as the bank) was made a defendant because it asserts an interest in the property upon which plaintiff claims liens. Several other persons from whom the company acquired its interest in the property were also made parties defendant; but at the close of the hearing the action was dismissed as to them. Breen appeared by filing a demurrer to the complaint, but no disposition was ever made of it, and, as to him, the action is still pending in the district court. Spaulding suffered entry of default for failure to appear. The answer of MacGinniss and the company denies generally all the material allegations of the complaint. In addition to the same general denials, the bank alleges that on October 15, 1907, it became the owner of the mill by purchase from Spaulding, together with all the tools, machinery, and appliances therein, and is now the owner thereof. This allegation the plaintiff puts in issue by reply. The court found for plaintiff, as against defendants MacGinniss and Spaulding, for the full amount claimed in each count of the complaint, except one. As to this no evidence was offered. It rendered and caused to be entered a personal judgment against them, and declared the plaintiff entitled to liens upon the property for the several amounts due, and to have sale of it to satisfy his judgment, as follows: First, an undivided interest in the mining claims and in the mill and other improvements thereon, belonging to MacGinniss;

and, second, in case the proceeds are not sufficient to satisfy the judgment, of the entire mill. Plaintiff was also awarded counsel fees, to be paid out of the proceeds of the sale. The defendant MacGinniss has appealed from the judgment and an order denying his motion for a new trial.

1. When the record was filed in this court, counsel for plaintiff submitted a motion to affirm the order denying the motion for a new trial, on the ground that the notice of intention had not been served upon all the adverse parties, and because it had not been served in time. They also submitted a motion to. dismiss the appeal from the judgment, on the ground that the notice of appeal had not been served upon all the adverse parties. Disposition of these motions was deferred until hearing upon the merits, because a determination of them required an examination of the entire record. Now that we have made this examination, aided by the argument and admissions of counsel, we have concluded that the motion should be denied.

Proceedings on the motion for a new trial were first instituted by MacGinniss by serving his notice of intention after the decision was made, but before entry of judgment. These proceedings were premature. Under the statute, a party intending to move for a new trial may do so by serving his notice within ten days after the notice of entry of judgment, but not before. (Revised Codes, sec. 6796.) When the bill of exceptions first prepared in the case was submitted to the trial judge for settlement, it was found by counsel for MacGinniss that the notice of intention had been served prior to the entry of judgment. Thereupon, having then for the first time knowledge of the entry of judgment, counsel abandoned the proceedings as nugatory, and served and filed a new notice. The proceedings on the motion based upon the second notice were timely; for, though formal notice of the entry of judgment may be waived by the moving party by instituting his proceedings in support of his motion without it, such waiver is not properly imputable to one who inadvertently institutes his proceedings before the time at which he may do so. Both the notice of intention and the

notice of appeal were served upon Spaulding, the only party who appears upon the record to have any interest in opposing the purpose sought to be accomplished by the motion for a new trial and the appeal, *viz.,* the vacation of the judgment. The fact of service does not appear of record; but counsel for defendant MacGinniss during the oral argument on the motions in this court having repeated a statement made in his brief, to the effect that the service had in fact been made of both notices, this statement was accepted by counsel for plaintiff as true. This dispensed with the necessity of an amendment to the record showing the fact, which counsel for defendant stated they were ready to make.

2. On the merits, the first contention is that the court erred in admitting in evidence the notices of lien, for the reason that they do not describe the property upon which the work was done, nor properly indicate the character of the work. It is argued that there are three classes of liens claimed, to-wit: Certain ones for work done exclusively in the mine; others for work done exclusively in the construction and operation of the mill; and still others for work done both in the mine and in the mill; and that, since the notices do not segregate the items for work done upon the different parts of the property and specifically describe such parts, they furnish no basis to support a claim of lien, either upon any specific part of the property or upon the whole of it as a unit. It is also said that the statute does not grant a lien for repair work, or for the cutting of cordwood, and that certain of the claims for work done in this behalf are made without authority of law. These contentions will be better understood if a brief statement be made of the circumstances under which the lienors were employed and the situation and character of the property upon which the work was done.

The company and MacGinniss were in 1906 owners as tenants in common of a contiguous group of mining claims, seven in all. Defendant Spaulding, having in the latter part of that year obtained an option from the stockholders of the company to purchase all of its capital stock held by them if the claims should

after thorough examination and test by sampling prove of sufficient value to justify the purchase, the option contract authorizing him to take possession of the property for that purpose, and to build a sampling mill if necessary, assigned to Mac-Ginniss and Breen certain shares of his option. Thereupon the three, Spaulding and MacGinniss acting for Breen, took possession, and in August, 1907, began the erection of a sampling mill near the portal of a tunnel which had theretofore been driven into the mountain upon a claim designated as the "Clara Jurgens." Previous to taking possession MacGinniss and Spaulding entered into a contract with the stockholders of the company to redeliver the property to them in case they failed to take up the option, free from liabilities or encumbrances of any kind or character. The tunnel mentioned extends into the mountain about 800 feet, passing entirely through the Clara Jurgens claim and into the "Mabel Beal," a contiguous claim on the north. Immediately to the south is another claim in the group, designated "Placer Lot No. 42." Covering a part of the placer, and overlapping a portion of the Clara Jurgens on the south, is still another claim, designated as the "Central Lode." The mill is situated within the boundaries of this claim, and upon the boundary line between Placer No. 42 and the Clara Jurgens claim. Some of the men employed by Spaulding and MacGinniss worked exclusively in the construction of the mill and in operating it. Others worked exclusively in making repairs to the tunnel and in the pursuit of mining operations conducted in the Clara Jurgens claim. The repair work in the tunnel extended to its full length, and was therefore done in part within the boundaries of the Mabel Beal claim. Some of the men were employed in building a roadway, so that teams could reach the mill. Others were hired to cut cordwood for use as fuel in the boiler house connected with the mill. Still others were engaged exclusively in construction work upon additions made to the mill building, and alterations and repairs made in the machinery. Some did a small amount of work in gathering samples of ore from claims not mentioned in the

notices. None of them were employed under special contract, but all worked for wages at an agreed rate per day.

The contention is that, the plaintiff and his assignors having failed to specify in the accounts attached to their respective notices exactly the amount due them for each kind of work done by them, whether it was construction work or upon repairs, or in mining or road building, and to limit the claim of lien to the specific portion of the property upon which the work was done, the notices are insufficient, and should therefore have been excluded from the evidence. The statute declares: "Sec. 7290. [Revised Codes.] Every mechanic, miner, machinist, architect, foreman, engineer, builder, lumberman, artisan, workman, laborer, and any other person performing any work and labor upon, or furnishing any material, machinery or fixture for any building, structure, bridge, flume, canal, ditch, aqueduct, mining claim, quartz lode, tunnel, city or town lot, farm, ranch, fence, railroad, telegraph, telephone, electric light, gas or water works or plant, or any improvements, upon complying with the provisions of this chapter, for his work or labor done, or material, machinery or fixtures furnished, has a lien upon the property upon which the work or labor is done, or material furnished." It is apparent from even a casual reading of this provision that the legislature intended to provide for a lien in favor of any person who bestows labor upon any character of property as'such, or by whom material is furnished for the improvement of the property. That this is so is clear from the declaration at the close of the section that such person "has a lien upon the property upon which the work or labor is done, or material furnished." Under other provisions, the extent to which property, other than mines, is affected by the lien, is defined and limited. If the structure and land upon which it is situated both belong to the same person, the lien extends to the lot or lots occupied by the structure, if within a city or town, or to one acre of land if it is outside a city or town. If the interest of the person owning the structure is less than the fee, the lien affects his interest only. (Revised Codes, sec.

7293.)   In the latter case the structure may be sold and re-moved within twenty days after sale. (Id., sec. 7294.) It was pointed out in *Smith* v. *Sherman Min. Co.,* 12 Mont. 524, :31 Pac. 72, however, that the limitations prescribed in section 7293, *supra,* do not apply to mining claims, but that a lien upon such property extends to the whole claim; and this must be so, because such claims cannot be divided, and the improvements or structures put upon them often cannot be removed. They generally consist of shafts, tunnels, and similar excavations. The rule stated in *Smith* v. *Sherman Min. Co.* was held to be the rule under the statute of 1868 (Laws 1872, p. 509, sec. 1) in *Alvord* v. *Hendrie,* 2 Mont. 115. This statute has been amended in various other particulars, but the section referred to has been brought forward into the different compilations of our laws substantially as it then stood. In *Alvord* v. *Hendrie, supra,* it was held that, where one had expended work partly on a quartz claim and partly upon a mill erected thereon, he could claim and enforce a lien upon both the claim as an entirety and the mill. The decision in *Smith* v. *Sherman Min. Co.* proceeded upon the theory that, since the limitations declared in section 7293 cannot properly apply to this character of property, they were not intended to change the rule as declared in *Alvord* v. *Hendrie,* though they had been added to the statute by way of amendment since the decision in this case.

The rule declared in these cases was evidently had in mind by the person who prepared the notices involved in this case. The plaintiff and each of his assignors claimed a lien upon the mill and the claims upon which it is situated; that is, upon the Clara Jurgens, Placer Lot No. 42, and the Central Lode. One of the notices does not mention specifically the Central Lode, but, as already stated, this claim falls entirely within the boundaries of Placer Lot No. 42, and in our opinion the description of the latter is sufficient to indicate the area within which the work was done, though this claim is not specifically mentioned. Evidently, also, there was had in mind at the time the notices were prepared the idea that, since the work was done for the

exploitation of a group of contiguous claims, it was proper to treat them as constituting a single consolidated claim. This theory, we think, is correct. It is frequently the case that a group of contiguous claims is treated as a single one, and work is done upon one for the benefit of all. If such work is reasonably adapted to the development of all the claims and tends in any measure to accomplish this object, it is considered as annual representation work for all of the claims (*Copper Mt. Min. Co.* v. *Butte & Corbin C. & S. Min. Co.*, 39 Mont. 487, 104 Pac. 540), and all of them may be patented as a single claim. If this theory is legitimate for the purpose of developing and patenting mining claims, we see no good reason why lien claimants may not proceed upon the same theory in making their claims. There is nothing in the statute, *supra*, prohibiting it, and it is entirely consonant with the correct notion of what constitutes a mining claim.

Here the purpose had in view by Spaulding, Breen and MacGinniss was the exploitation and sampling of the entire group of claims. All the work done, including the erection of the mill, was with that end in view. The mill was apparently intended to be a permanent structure, and to become a part of the unit property, made up of the entire group. The workmen were all employed upon the enterprise, whether in construction work as such, or in repairs and alterations, or in mining work, or in building roads, or in cutting cordwood. The entire group constitutes a consolidated claim, and the work of the whole enterprise was expended upon it. The statute does not mention repairs and alterations; yet it takes labor to accomplish them. Touching the labor expended in building roads and preparing fuel belonging to the owner for use in producing power to carry on his enterprise, it may be said it is as much labor done on the claim as is that expended in the use of a pick or hammer and drill in the workings of the mine above or below ground. The same may be said of operatives in the mill whose duty requires them to keep the machinery in order and to clear away debris which accumulates from time

to time in and about the buildings erected to house the machinery. It is true that it was held by this court, in *McGlauflin* v. *Wormser*, 28 Mont. 177, 72 Pac. 428, that one must look to the statute for the right to claim a lien for labor done or materials furnished, and that no such right exists unless specific provision is made for it. It was also held in *Holter Hardware Co.* v. *Ontario Min. Co.*, 24 Mont. 198, 81 Am. St. Rep. 421, 61 Pac. 8, 20 Morr. Min. Rep. 518, that one furnishing fuel or lubricating oil to a mining company has no lien for the price of it, because lubricating oil and fuel are consumed in the use, and do not become a part of the property of the owner. Neither of these cases furnishes, even by implication, support for the conclusion that one employed by a mine owner to do work upon his property in connection with his enterprise, without which it cannot proceed, has not a lien upon the property to secure the price of his work. The statute does not require the character of the work done to be classified or even the items of it to be set out in the account filed with the notice. All that is required is a just and true account—an honest statement—from which may be understood what amount is claimed. (Revised Codes, sec. 7291; *Black* v. *Appolonio,* 1 Mont. 342; *Merrigan* v. *English,* 9 Mont. 113, 22 Pac. 454, 5 L. R. A. 837; *Smith* v. *Sherman Min. Co., supra.*)

It is argued in this connection that, since the evidence shows that a portion of the work done by some of the men was done upon the Mabel Beal claim and others in the group not included among those described in the notices, and the value of this portion of the work cannot be definitely ascertained, all lien claims affected by this condition should have been excluded. This argument is fully answered by the statement that the plaintiff and each of his assignors was entitled to a lien upon the entire group, including the seven claims, and that the defendant cannot complain that they claimed less than they were entitled to and asserted their right as to only three claims of the group. If they had a right of lien upon the whole group, they had the same right as to each claim constituting the group. The work done, whether upon one or the other of

the claims, affected each claim.   Therefore it seems unreasonable to say that, because they failed to assert as extensive a right as they really had, they lost their right altogether.

3. The foregoing discussion disposes of the contention that the court erred in rendering judgment for plaintiff.   The evidence fully establishes the fact that the work was done at the instance of Spaulding and MacGinniss, and that they are personally liable for the amounts claimed to be due.   Whether they were technically partners or not, the work was done at their instance and in part paid for by them.   Neither the company nor the bank had any connection with the employment of any of the men.

From the facts detailed in the statement heretofore made, it is apparent that some of the lien claimants were engaged in construction work upon the mill exclusively.   Those so engaged might have proceeded upon the theory that Spaulding and MacGinniss were lessees, and claimed their liens against the mill only and enforced them by sale of it under the provisions of section 7294, *supra*.   It might plausibly be argued that, since they did not pursue this course, but elected to treat the mill as a part of the realty, neither they nor the rest of the claimants who had no such right, because they did other kinds of work, ought to have ordered a sale of the mill as a whole as the judgment directs.   The company, which is the owner of the other interest in the property, is the only person who could complain of this feature of the judgment.   Since this is so, and since it did not appeal, we must presume that it is satisfied with the result.   The judgment is clearly correct in ordering the sale of the MacGinniss interest in the realty, including his interest in the mill.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Holloway concurs.

Mr. Justice Smith: I am unable to concur in that portion of the foregoing opinion which deals with labor performed upon the Mabel Beal claim.