DEAN ET AL., RESPONDENTS, *v.* STEWART ET AL., APPELLANTS.

(No. 3,407.)

(Submitted September 15, 1914.   Decided October 20, 1914.)

[143 Pac. 966.]

*Mechanics' Liens — Railroads — Notice of Lien—Sufficiency —*
*Equity—Findings—Conclusiveness.*

Equity—Findings—Conclusiveness.
1.   The findings in an equity case, whether the result of a trial by the court or a referee, based upon substantially conflicting evidence, will be sustained on appeal unless the evidence preponderates against them.

[As to weight in appellate court of findings of judge as to amount of damages as compared with verdict of jury, see note in Ann. Cas. 1913C, 178.]

Mechanics' Liens—Railroads—Notice of Lien—Sufficiency.
2.   Where, from a notice of lien for materials and labor furnished in the construction of a railway roadbed, it could be ascertained that the property sought to be charged with a lien was a particular portion of the roadbed in a certain county belonging to the therein named railway company, and located "on miles 46 and 47 of the survey" of said railway company, near a given place, the notice was sufficiently specific to meet the requirements of section 7291, Revised Codes.

[As to the application of mechanic's lien laws to railroads, see note in Ann. Cas. 1913C, 95.]

Same—Lien on Roadbed—Extent of Lien.
3.   Since a mechanic's lien is primarily given upon the structure in the erection of which work was done and material furnished, it cannot be affected by a misdescription of the land upon which it stands, if the structure itself can be identified; hence a lien on a portion of a railroad roadbed, located outside a city or town, susceptible of identification, was not defeated merely because in the notice of lien the description of the roadbed covered more than one acre (Rev. Codes, sec. 7293).

[As to buildings and other property subject to mechanics' liens, see note in 78 Am. Dec. 694.]

*Appeal from District Court, Missoula County; F. C. Webster,*
*Judge.*

ACTION by Guy Dean and E. T. Elrod, copartners, against John Stewart and Patrick Welch, copartners, and the Chicago, Milwaukee & St. Paul Ry. Company of Montana.   From a judgment in favor of plaintiffs, defendants appeal.   Modified and affirmed.

*Mr. Henry C. Stiff* and *Mr. William L. Murphy*, for Appellants Dean and Elrod, submitted a brief and argued the cause orally.

*Messrs. H. H. Field, F. M. Dudley* and *Henry C. Stiff*, for Appellant Railway Company, submitted a brief; *Mr. Stiff* argued the cause orally.

Appellant railway company contends that there has not been even a substantial compliance with that provision of the Code (sec. 7291) relating to a description of the property sought to be charged, and that therefore no lien was ever created upon its property, the description being too indefinite and uncertain to constitute a compliance with the statute. This contention is supported by decisions of the supreme court of Missouri in the following cases: *Matlack* v. *Lare,* 32 Mo. 262; *Williams* v. *Porter,* 51 Mo. 441; *Wright* v. *Beardsley,* 69 Mo. 548; *Ransom* v. *Sheehan,* 78 Mo. 668. ·Furthermore, the area of the piece or parcel would be something more than fifteen acres, and as already indicated, appellants' contention is, in view of the provisions of section 7293, Revised Codes, that a lien cannot extend to any greater area than one acre, if outside of any town or city. The language of the statute referred to is so plain that it does not seem there could be any question as to the limitation of a lien to one acre. This view, we think, is sustained by the language of this court in the case of *Smith* v. *Williams,* · 2 Mont. 195, as well as that in *Smith* v. *Iron Mountain Tunnel Co.,* 46 Mont. 13, Ann. Cas. 1914B, 551, 125 Pac. 649. It may be suggested that the defect just pointed out may be remedied by a modification of the decree, limiting the area to be affected by the lien to one acre. This, however, we insist cannot be done in view of the doctrine announced by this court in the case of *Yerrick* v. *Higgins,* 22 Mont. 502, 57 Pac. 95. That was a case where a party seeking to avail himself of the homestead exemption law by filing the declaration provided for by statute, embraced by the description of the property a slightly greater area than was permissible under the law, and it was held that

the declaration was void as to the whole of the property claimed as exempt, notwithstanding an exemption thereof could have been effected had the property described and claimed not been of greater area than the law authorized. It may be suggested that the foregoing contention, so far as the matter of area is concerned, is not in accord with the decisions in the following cases: *Cox* v. *Western Pac. R. R. Co.,* 44 Cal. 18; *Williams* v. *Mountaineer Gold Min. Co.,* 102 Cal. 134, 34 Pac. 702, 36 Pac. 388; *Farmers' Loan & Trust Co.* v. *Candler,* 87 Ga. 241, 13 S. E. 560; *Midland Ry. Co.* v. *Wilcox,* 122 Ind. 84, 23 N. E. 506; *Park City Meat Co.* v. *Comstock Silver Min. Co.,* 36 Utah, 145, 103 Pac. 254. These decisions, or at least some of them, hold that the right of lien extends to the whole of the "structure" upon which the work and labor was performed, or for which materials were furnished, and that a claim of lien upon any portion of the "structure" less than the whole thereof is void. They do not disclose what limitations, if any, as to area were provided by statute in the states in which such decisions were rendered, and we have been unable from any other source to ascertain what, if any, limitations were there prescribed. But if these decisions are to be considered as at all controlling, we insist nevertheless that the so-called lien in this case is void, as the notice or claim of lien filed by respondents does not pretend to extend to or affect any part of the "structure" (the roadbed of this appellant) other than "a certain piece of roadbed of the Chicago, Milwaukee and St. Paul Railway Company of Montana," *etc.*

*Messrs. Hall & Whitlock,* for Respondents, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

It is contended by the appellants that the lien is invalid for the reason that it does not properly describe the property sought to be charged. They rely upon four Missouri cases, but it will be seen upon an examination of those cases that they do not support the propositions for which they were cited.

The case of *Mattlack* v. *Lare* was an attempt to describe certain buildings, and it simply described them as located on a

certain street between two other streets. In the case of *Williams*
v. *Porter* the only description of the land was a description
of the subdivision according to the government survey, a de-
scription including forty acres. In the case of *Wright* v. *Beards-
ley* there was simply a statement that the house was situated
"near the northeast corner of the northeast quarter of the
southwest quarter of section 9, *etc.*" While in the case of *Ran-
som* v. *Sheehan* a description of fifteen acres of ground was
held not sufficient to identify a certain building standing on
the fifteen acres. It is to be noted that neither one of these
cases was a railroad case, and it is to be noted further that
in this case in the notice of lien there is a definite designation
of the line of railroad extending over two miles, which is
easily identified from the plat to which reference is made, and
in the decree the lien is limited to the line of railway included
between certain definite stations which are also easily iden-
tified. It has been held even in Missouri that the description
of more land than the amount upon which the party is allowed
a lien is fatal (see *Oster* v. *Rabeneau,* 46 Mo. 595; *Bradish* v.
*James,* 83 Mo. 313), the case last cited being later than any
of the cases cited by appellants. The cases are legion in other
jurisdictions where the property sought to be charged is not a
railroad, to the effect that a description of more property than
the amount upon which the lien is allowed is not fatal. (See
*North Star Iron Works* v. *Strong,* 33 Minn. 1, 21 N. W. 740.)
And it is to be noted that in that state the statute is similar
to our own. (*Evans* v. *Sanford,* 65 Minn. 274, 68 N. W. 21;
*White Lake Lumber Co.* v. *Russell,* 22 Neb. 126, 3 Am. St. Rep.
262, 34 N. W. 104; *Whitenack* v. *Noe,* 11 N. J. Eq. 321; *Halsey*
v. *Waukesha etc. Sanatarium,* 125 Wis. 311, 110 Am. St. Rep.
838, 104 N. W. 94.) For other cases holding that an inaccuracy
in the description is not fatal, see *Willamette etc. Co.* v. *Kremer,*
94 Cal. 205, 29 Pac. 633; *McHugh* v. *Slack,* 11 Wash. 370, 39 Pac.
674; *Howe* v. *Smith,* 6 N. D. 432, 71 N. W. 552; *Doyle* v. *Wagner,*
100 Minn. 380, 111 N. W. 275. With reference to railroads, the
same consideration would apply so far as the accuracy of the de-

scription is concerned, but we desire to state frankly that there is a considerable conflict in the cases as to whether a lien upon a railway should be upon the entire road, the portion of the road in the state, or upon that portion of the railroad upon which the work was done. Appellants have cited some cases which seem to hold that the lien should be upon the whole road. Yet upon close examination of those cases it cannot be said that they are contrary to the position taken by us in this case. We desire to call the court's attention to two cases which we consider in point upon this very matter: *Adams* v. *Grand Island etc. R. Co.,* 12 S. D. 424, 81 N. W. 960, and *Ban* v. *Columbia etc. Ry. Co.,* 117 Fed. 21, 54 C. C. A. 407.

MR. JUSTICE SANNER delivered the opinion of the court.

The plaintiffs brought this action in the district court of Missoula county to recover from the defendants, Stewart & Welch, a balance of $51,205.85, alleged to be due for labor and materials furnished in the construction of the railway and road-bed of the defendant Chicago, Milwaukee & St. Paul Railway Company of Montana, during the years 1907 and 1908, and to foreclose a lien upon said property. The material issues of fact were the amount and value of the work done and whether the work was done under contract between the plaintiffs and Stewart & Welch, who were contractors under Winston Brothers, whose contract in turn was with the company. The issues were referred to Daniel J. Heyfron, Esq., an attorney and counselor at law of Missoula, Montana, who was directed to take the proof and report the same, together with his findings of fact and conclusions of law, to the district court. The referee proceeded, and as the result of the evidence presented to him, found, in substance, that Stewart & Welch did contract with the plaintiffs for the construction of the portion of the railway in question, agreeing to pay therefor as follows: 32½ cents per cubic yard for moving common earth, 90 cents per cubic yard for solid rock, 1 cent per cubic yard for overhaul, and $1.25 per square rod for grubbing; that the plaintiffs moved 90,751 cubic

yards of common earth, 24,870 cubic yards of solid rock, 664,400 cubic yards of overhaul, and did 58 square rods of grubbing; that at the special instance of Stewart & Welch and the railway company, plaintiffs also did extra work in reconstructing a culvert of the reasonable value of $250; that in consequence of such operations plaintiffs became entitled to receive the sum of $58,843.57 and have received $48,843.95, leaving still due to them $9,999.62; that the work was completed on November 10, 1908, and on December 16, 1908, plaintiffs filed their notice and claim of lien. As conclusions of law the referee reported that plaintiffs were entitled to judgment against the defendants Stewart & Welch for $9,999.62, with interest at eight per cent from December 18, 1908, and to a first lien upon 3,300 feet of said railroad lying between stations 1600 and 1633, in miles 46 and 47 near Rivulet, Missoula county, Montana.

This report of the referee, together with the evidence presented at the hearing before him, was submitted to the district court, upon plaintiffs' motion for a judgment and decree accordingly, and upon defendants' exceptions to the report, motion to reject the findings and to adopt certain other findings contrary thereto. The court overruled the motion to reject and adopted the findings, save as to an item of attorneys' fees. On May 21, 1912, a judgment and decree was entered for the plaintiffs as of December 30, 1911, in accordance with the findings as adopted. From that judgment and decree Stewart & Welch and the railway company have appealed.

Much discussion is devoted to the proposition that this court ought not to consider the voluminous record of the evidence, for certain reasons of procedure. We shall put them aside, because we prefer to dispose of the case upon the merits.

The questions then are: (1) Is the evidence sufficient to sustain (a) the finding of a contract between the plaintiffs and Stewart & Welch, and (b) the finding as to the amount of work done? (2) Is the notice of lien sufficient?

1. We shall assume without deciding, that this case—even as to Stewart & Welch—is in equity, and that the conclusions below

[1]   may be reversed if the evidence decidedly preponderates
against them; but in determining whether the evidence does
preponderate against the findings, we are not to forget that the
trial court (in this case the referee) had the advantage of the
personal presence of the witnesses, and "owing to this advan-
tageous position this court will naturally hesitate to overturn
findings based upon substantially conflicting evidence which
would justify an inference in favor of either side." (*Bordeaux*
v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Boyd* v. *Huffine*, 44 Mont.
306, 120 Pac. 228.)   (a) The contention on the part of defend-
ants was that plaintiffs were not in contractual privity with
Stewart & Welch but with one John Hanson, a contractor under
Stewart & Welch. Let it be granted that there is ample evi-
dence to justify this conclusion; what is to be said against it?
The plaintiff Dean testified that there had been negotiations
between his firm and Hanson for the work at a certain price;
these negotiations terminated without result; thereafter he saw
Mr. Shepard, who is admitted to have been the superintendent
and authorized agent of Stewart & Welch, and who sought to
have plaintiffs do the work; he was told by Dean that they would
take the work from Stewart & Welch but would have nothing
to do with Mr. Hanson. Shepard told them to go ahead and
a price was agreed upon. During the work plaintiffs took their
instructions from Stewart & Welch. Mr. Elrod, the other plain-
tiff, testified to similar effect. Mr. Shepard testified for the
defendants, that as superintendent for Stewart & Welch he had
written to and discussed with the plaintiffs the matter of their
doing the work, but that he did so and actually procured the
plaintiffs to do the work for Hanson, as it was within the range
of Hanson's contract. Certain letters, however, which were
received in evidence, tend to support the plaintiffs rather than
Mr. Shepard in this regard. Prior to September 23, 1907, plain-
tiffs had signified to Hanson their willingness to accept a con-
tract from him, and on that date he wrote to them that certain
changes in the work directed by the engineers of the company
precluded the successful use of a team outfit, "so we will have

to call the deal off." On September 25, plaintiffs wrote Mr. Shepard inclosing Hanson's letter of September 23, adding: "Will consider your letter a guaranty and will continue to make our arrangements to move over and take the work." In response plaintiffs received a letter signed "Stewart & Welch— J. C. Shepard," stating: "You can have the cut and at prices named, and as I said before, I will see you get a square deal." Plaintiffs answered: "Would like to have you make Hanson come through with a contract for the work after what has transpired"; and the rejoinder, signed "J. C. Shepard for Stewart & Welch," says: "It is not customary to forward contracts to sign before outfit is on the ground, but in this case it is entirely unnecessary as my letters are the agreement." The foregoing, coupled with other details and circumstances presented in the record, forbid us to say that the finding upon this point was without substantial support.

(b) The same conclusion must be reached touching the amount of work that was done. The real controversy was as to the amount of rock removed, and upon this there was a sharp conflict between Dean, Elrod, Sibley and Mayo on the one side, and the company's engineers—two in number—on the other. We cannot undertake to decide between these witnesses; but upon settled principles will uphold the finding of the referee as adopted by the court. (*O'Malley* v. *O'Malley*, 46 Mont. 549, 558, Ann. Cas. 1914B, 662, 129 Pac. 501.)

2. In the notice or claim of lien as filed by the plaintiffs, it is averred that the balance claimed is "for excavating and [2] building a certain piece of roadbed of the Chicago, Milwaukee & St. Paul Railway Company of Montana, being miles forty-six (46) and forty-seven (47) of the roadbed on the right of way of the said railroad company, located in Missoula county, Montana, and located on the premises hereinafter described. * * * That the said Chicago, Milwaukee & St. Paul Railway Company of Montana at the time said contract was entered into and said labor was performed and said material was furnished, was the owner of said improvement, railroad and roadbed, and

49 Mont.—33

that said improvement, railroad and roadbed is situate on a certain lot, belt or strip of land on the right of way of said railway company, and being particularly described as being done near Rivulet, Montana, on miles forty-six (46) and forty-seven (47) of the survey of said Chicago, Milwaukee & St. Paul Railway Company of Montana.'' It is contended that this description is insufficient under the provisions of section 7291, Revised Codes, which requires the notice or claim of lien to contain ''a correct description of the property to be charged with such lien, * * * but any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description.'' We cannot agree with this contention. Analyzing the description, we ascertain that the property sought to be charged with a lien is a particular portion (miles 46 and 47) of a particular property (a roadbed and railroad in Missoula county) belonging to a particular person (the Chicago, Milwaukee & St. Paul Railway Company of Montana) and located at a particular place (near Rivulet).. Whether or not a description is definite depends upon what is to be described, and as the physical aspect of a railroad traversing an entire county differs from that of a house or a plot of ground, so is there a difference in the essentials of its description. Counsel for the company say: ''No one can tell from the description given, at what point or place one should start from and go forty-six or forty-seven miles to be upon that portion of the road upon which respondents claim to have a lien.'' This perverts the language of the notice. ''Miles Forty-six and Forty-seven'' are not given as distances but as designations of a portion of continuous railroad. We are quite certain that anyone who wished to do so could, by starting at Rivulet, go to the company's line of railroad and find the portion thereof near Rivulet designated as ''miles forty-six (46) and forty-seven (47)'' unless—which does not appear—there are other portions of said railroad in that locality similarly described. An analogous situation was presented in *Western Iron Works* v. *Montana Pulp & Paper Co.*, 30 Mont. 550, 77 Pac.

413, and this court, pointing out that the property sought to be charged with the lien was monumental in character, ruled that "any description which will enable one familiar with the locality to identify the property upon which the lien is claimed is sufficient."

It is suggested, however, that in view of section 7293, Revised [3] Codes, which limits the lien on the land upon which the structure is situated to one acre, and in view of the fact that the portion of railroad sought to be charged with the lien covers approximately fifteen acres, it is impossible to fix the portion to which the lien shall apply; and therefore the description is insufficient. Attention was called in the *Western Iron Works Case,* above, to the fact that the lien is given primarily upon the structure and cannot be affected by misdescription of the land on which the structure stands, if the structure can be identified. In this view, therefore, if the portion of the railroad sought to be subjected to the lien can be identified, the lien is not defeated merely because the structure covers too much ground. Much diversity of opinion exists among the authorities as to whether a lien for work done and materials furnished in the construction of a railroad attaches to the entire railroad within the state, or to the portion thereof that is within the county wherein the lien is filed, or to the portion upon which the work was done. The fountain-head of all mechanics' liens, so called, in this state is section 7290, Revised Codes; by that section mining claims and railroads are, as possible subjects for such liens, *in pari materia;* and in *McIntyre* v. *MacGinniss,* 41 Mont. 87, 96, 137 Am. St. Rep. 701, 108 Pac. 353, this court construed section 7293 so far as mining claims are concerned. Speaking through the Chief Justice we said: "That the limitations prescribed in section 7293 do not apply to mining claims, but that a lien upon such property extends to the whole claim; this must be so because such claims cannot be divided, and the improvements and structures put upon them often cannot be removed." So that, whether we say the lien attaches to the whole of defendant company's railroad within the county, or

only to the portion thereof upon which the work was done, the extent of ground covered by it is not of vital importance, because if the lien attaches to the whole railroad within the county, the owners cannot complain that the claimant has asked for less. (*McIntyre* v. *MacGinniss, supra.*)

The decree adjudges "that plaintiffs have a first and prior lien upon the property described in plaintiffs' complaint and in the foregoing findings of fact and conclusions of law," and authorizes the sale under foreclosure of "that certain strip of land together with the railroad and improvements thereon, two hundred (200) feet in width, extending from station sixteen hundred (1600) to sixteen hundred thirty-three (1633), being thirty-three hundred (3300) feet in length, near the town of Rivulet, in Missoula county, known as the right of way and railway of said Chicago, Milwaukee & St. Paul Railway Company of Montana; * * * and also that certain strip of land two hundred (200) feet in width, known as the right of way and railway of the Chicago, Milwaukee & St. Paul Railway Company of Montana, as it is and was surveyed at the time of the filing of said lien, throughout its extent, across the county of Missoula together with the railway located thereon," *etc.* Counsel for the company omit the reference to the findings of fact and conclusions of law above quoted, and say that the description of the property authorized to be sold is different from that contained in either the notice of lien or the complaint. But the decree must be taken as a whole, and from the findings set out therein we ascertain that the strip between stations 1600 and 1633 is within "miles forty-six (46) and forty-seven (47)," and is in fact a part of the same property on which the lien is claimed and described in the notice thereof. If the plaintiffs were—as we hold—entitled to a lien upon all of miles 46 and 47, it is hard to see how the company is injured by the decree in this respect. The decree could, however, be improved by inserting the words "in miles 46 and 47" after the words "thirty-three hundred (3300) feet in length" in the last paragraph of the decree. It could also be further im-

proved by striking out of the last paragraph all that portion . thereof commencing with the words "and also" and ending with the words "railway located thereon, and"—this for the reason that while the lien of plaintiffs is not defeated by the allowance of less than they have claimed, nor by their claiming less than they might have claimed, they cannot have more than their claim will justify.

The judgment and decree appealed from should be modified as above indicated, and, when so modified, should stand affirmed. So ordered.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

