JACK LONG LOGGING COMPANY, a Corporation, Plaintiff and Appellant, v. PYRAMID MOUNTAIN LUMBER, INC., a Corporation, THE WESTERN MONTANA NATIONAL BANK of Missoula, a National Banking Association, HARRY SPENCE, DOUGLAS-GUARDIAN WAREHOUSE CORPORATION, a Corporation, Respondents.

No. 10482

Submitted November 7, 1963. Decided December 17, 1963.

387 P.2d 712.

Smith, Boone & Karlberg, Russell E. Smith (argued), Missoula, for appellant.

John Patterson, Jr. (argued), Garlington, Lohn & Robinson,

Sherman V. Lohn (argued), Missoula, I. James Heckathorn (argued), Whitefish, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment, which so far as is pertinent here, adjudged that plaintiff's claimed lien was invalid, and that as a consequence defendants, Western Montana National Bank and Douglas-Guardian Warehouse Corporation, are entitled to moneys held and for costs.

Appellant here was plaintiff below seeking to establish a loggers' lien. Appellant is a Corporation employed as a logging contractor to do logging at a price per thousand board feet. Appellant was adjudged not to have a valid lien with its attendant preference rights. We will hereinafter refer to the appellant as the Logging Corporation.

The defendants below were four in number, one of them being identified as an independent contractor hauling logs, who like plaintiff had filed and asserted a lien. This particular defendant does not appear in this appeal.

The other defendants were Pyramid Mountain Lumber, Inc., The Western Montana National Bank, and Douglas-Guardian Warehouse Corporation. These are all respondents here. Pyramid Mountain Lumber, Inc., will hereinafter be referred to as Pyramid Mill. The Western Montana National Bank as the Bank and Douglas-Guardian Warehouse Corporation as the Warehouseman.

The actors then are the Logging Corporation, Pyramid Mill, the Bank, and the Warehouseman. Pyramid Mill employed the Logging Contractor to do certain logging at a price per thousand board feet. The Logging Contractor was found to have earned, so far as pertinent here, the sum of $12,804.05 and was unpaid. The Logging Contractor had paid its employees their wages.

The Bank was financing Pyramid Mill through the device of warehouse receipts. Logs and manufactured lumber were de-

livered to a warehouse maintained by the warehouseman on land owned by Pyramid Mill but leased to the warehouseman.

On October 13, 1960, and within thirty days after rendition of services, the Logging Contractor filed a lien against logs and lumber in the warehouse.

The Logging Contractor recovered judgment against the Pyramid Mill for the sum of $12,804.05, but was specifically adjudged not to have a valid lien and thus costs were awarded to the Bank and the Warehouseman.

The appeal is on the judgment roll only. We do not have a Bill of Exceptions, but the facts are not in dispute so far as our holding here is concerned. In making its judgment, the trial court made conclusions of law. The specifications of error go to the conclusions of law and are put forth by the Logging Contractor in the form of three questions:

(1) Is a Corporation entitled to a loggers' lien?

(2) Is an independent contractor entitled to a loggers' lien?

(3) Does the manufacture of logs into lumber cut off an otherwise valid loggers' lien?

(4) Does the transfer of logs into a warehouse cut off an otherwise valid loggers' lien?

Since, if the first of these questions is answered in the negative, the appeal fails, we shall narrow our discussion to what we consider the decisive issue here.

R.C.M.1947, § 45-401, provides:

*"Who entitled to lien.* Every person performing labor upon, or who shall assist in obtaining or securing sawlogs, piling, railroad ties, cordwood, or other timber, has a lien upon the same and upon all other sawlogs, piling, railroad ties, cordwood, or other timber which, at the time of the filing of the claim or lien hereinafter provided, belonged to the person or corporation for whom the labor was performed, for the work or labor done upon or in obtaining or securing the particular sawlogs, piling, railroad ties, cordwood, or other timber in said claim or lien described, whether such work or labor was done at the instance

of the owner of the same or his agent, or a contractor or subcontractor, or any person in behalf of such owner or his agent, or a contractor or subcontractor. The cook in a logging camp shall be regarded as a person who assists in obtaining or securing any of the timber herein mentioned."

It is here that the Logging Corporation argues that the words "Every person" includes "corporation." To reach this, the Logging Contractor asserts that R.C.M.1947, § 19-103, states in part:

"*Certain words defined.* The following words when used in the Revised Codes of Montana of 1947, or in any act amendatory of or supplemental to said codes, shall have the following meanings and interpretations *unless otherwise apparent from the context.* * * * *the word person includes a corporation* as well as a natural person * * *."

From this definitive foundation counsel argues that the context of the statutes do not otherwise indicate; and, so "person" includes corporation.

It is immediately apparent, though, that the drafters of section 45-401 went further. The section gives a lien to "Every *person* performing labor upon, or who shall assist in obtaining or securing sawlogs, * * * has a lien upon the same and upon all other sawlogs * * * which * * * belonged to the *person* or *corporation* for whom the labor was performed * * * whether such work or labor was done at the instance of the owner * * * or a *contractor* or *subcontractor* * * *."

It appears that the Legislature differentiated within the section itself between a *person* a *corporation* and a *contractor*. This would indicate that the context makes it otherwise apparent that the word "person" does not include a corporation as a contractor so far as loggers' liens are concerned.

Now, then, section 45-401 was originally enacted as section 1 of House Bill No. 8 in the Sixth Legislative Assembly in 1899. At that time the section provided for a lien to every person performing work "whether such work or labor was done at the

instance of the owner or his agent." By Chapter 60, of the Session Laws of 1909, the section, then 5819, R.C.M.1907, was amended by adding, "or a contractor or sub-contractor or any person in behalf of such owner or his agent, or a contractor or sub-contractor."

The following year, in 1910, in an opinion handed down on March 2, 1910, this court in Lane v. Lane Potter Lumber Co., Ltd., 40 Mont. 541, 547, 550, 551, 107 P. 898, discussed section 45-401 as it applied prior to the amendment made in 1909 as follows:

"The first section of the Act (Rev.Codes, § 5819) creates a lien in favor of 'every person performing labor upon, or, who shall assist in obtaining or securing sawlogs, piling, railroad ties, * * * whether such work or labor was done at the instance of the owner of the same or his agent.' By the second section (section 5820) a lien is created in favor of 'every person performing work or labor or assisting in manufacturing sawlogs and other timber into lumber * * * upon such lumber while the same remains at the mill where it was manufactured, * * * whether such work or labor was done at the instance of the owner of such logs or his agent or any contractor or subcontractor of such owner.' This section defines the term 'lumber' to mean 'all logs or other timber sawed or split for use, including beams, joists, planks, * * * of whatsoever nature or description manufactured from sawlogs or other timber.' The third section (section 5821) provides for a lien in favor of the owner of the land upon which the sawlogs or other timber is cut. It is apparent from a cursory examination of it that this legislation was enacted to create an equity in favor of three classes of persons, to-wit: (1) Those who are employed to obtain or secure rough timber and transport it to the mill for manufacture; (2) those who are employed to assist in the manufacture of it into lumber in any form; and (3) those who own the land from which the timber is taken. The plaintiffs fall in the first class, for they claim an equity by virtue of

labor expended in obtaining and securing sawlogs; that is, rough timber. The validity of the judgment declaring liens in their favor must therefore rest upon the answer to the inquiry: What does the evidence tend to show as to the character of the work done by the plaintiffs, and as to who employed them to do it?

"The statute creates a new right. Therefore the requirements as to the steps to be taken to secure it must be strictly pursued (McGlauflin v. Wormser, 28 Mont. 177, 72 Pac. 428); and the evidence must show that, when the labor and services were performed, the plaintiff occupied the relation toward the defendant designated in the statute out of which the right to the lien arises; for it is of no moment what services are rendered, or at whose instance they are rendered, if the evidence does not bring the plaintiff clearly within the class of those whom the Legislature intended to favor. While in the second section of the act the employment may be by the defendant or his agent, or 'any contractor or subcontractor of such owner,' in the first section the employment may be only 'by the owner * * * or his agent.' Why this distinction was made we may not stop to inquire. It may have been, and doubtless was, the result of oversight in the person who drafted the measure. After the claims involved in this case arose, the Legislature amended the first section so as to render it even broader than the second section in defining the agency of employment (Laws 1909, p. 66); but that this is so does not aid in the determination of this case. It merely confirms the view that the omission referred to was the result of oversight. However this may have been, the distinction is substantial, and may not be ignored. * * *

"* * * If McGill's evidence means anything at all, his relation to the corporation was that of an independent contractor, and the employment of the men was by him only. He was to get out the logs and deliver them on the river bank for $5 per thousand feet, and he employed the plaintiffs. In other

parts of his testimony he states the price per month that he—not his codefendant—had agreed to pay them. It is not intimated by him either in the portion of his testimony * * *, or elsewhere, that he was authorized by the company to act for it in any way. Nor is his testimony aided by any statement in the letter of the corporation quoted; for it is apparently addressed, not to the men in the employ of the company, but 'to the men employed by John McGill.' It is true that it implies, perhaps, that there may be some sort of liability to plaintiffs on the part of the company as guarantor or otherwise for wages earned up to the time at which it was written. Yet in the light of McGill's statement and the fact that it was addressed to the men employed by McGill as such, the conclusion seems inevitable that the employment was by McGill exclusively. If they have any right against the company, it is upon some other theory than that stated in the complaint or shown by the evidence.

"It is argued with much plausibility that the first section of the Act (Rev.Codes, § 5819) is broad enough in its terms to cover all cases in which labor has been expended on logs belonging to another. In any event, it is said that the contractor is the agent of the owner. In support of this contention are cited the cases of Merrigan v. English, 9 Mont. 113, 22 Pac 454, 5 L.R.A. 837, and Duignan v. Montana Club, 16 Mont. 189, 40 Pac. 294. It must not be overlooked, however, that these are cases involving mechanics' liens, and arose under a statute materially different in its provisions from the one under consideration here. As amended from time to time, this statute has been in force in this jurisdiction since 1872. Rev.St.1879, Div. 5, § 820, et seq.; Comp.St.1887, Div. 5, § 1370, et seq.; Code Civ.Proc.1895, § 2130 et seq.; Rev.Codes, §§ 7290-7301. The history of it is given in detail in Merrigan v. English. It is sufficient to say of it here that it is broad enough in its terms to make a contractor in any degree the agent of the owner to the extent of charging his property with a lien in favor of any

one who has expended labor upon it or has furnished material for its improvement. In the statute before us, however, the use of the words, 'Whether such work or labor was done at the instance of the owner of the same or his agent,' implies that the employment may be made only by the owner or one employed by him as agent. One who occupies toward the owner merely the relation of contractor is not his agent for any purpose, unless by the terms of the contract authority is given him to act as such. As we have shown, the evidence does not show that McGill was the agent of the corporation.

"However much we might be disposed to extend the terms of the first section of the statute, and, in view of the broad provisions contained in the second section, to hold that the contractor is the agent of the person under whom he holds the contract for the purpose of fixing a lien upon his property in favor of the employees of the contractor we have no power to do so."

We have quoted from Lane v. Lane Potter Lumber Co., supra, at length because this case has stood for over fifty years, and the loggers' lien statute has not been amended in all that time. The case was quoted with approval in Billings v. Missoula White Pine Sash Co., 88 Mont. 322, 292 P. 714.

 The Logging Corporation argues that Caird Engineering Works v. Seven-Up Min. Co., 111 Mont. 471, 111 P.2d 1267, interpreted the word "person" appearing in the mechanics' lien law as embracing a corporation. That is true, but as pointed out in the Lane opinion, the loggers' lien statutes are strictly construed so far as determination of who comes within the favored lien class.

The Logging Corporation goes on to argue that this should not be the rule because R.C.M.1947, § 12-202, provides for liberal construction with a view to effect the objects of the legislation and to promote justice. The Logging Corporation then "plausibly" argues, borrowing Chief Justice Brantly's language of half a century ago, that the mechanics' lien laws and

the loggers' lien laws should be on the same basis so far as construction is concerned.

We think the Legislature answered this in its own way when it drafted, passed and then amended what is now Title 45, R.C.M.1947. Carrying on the rationale a step further, we inquire just who was the Legislature intending to protect in loggers' lien laws? We think it intended protection to individuals who perform physically the labor and whose family's daily existence is dependent on wages or emoluments; and as said in the California case of Virden v. Neese, 66 Cal. App.2d 724, 152 P.2d 761, 764, "are generally neither able to investigate nor insist upon the credit of their employers."

So far, other than to borrow language from foreign jurisdictions, we have looked to Montana statutory and case law alone. Now we shall examine some other case law, some under statutes similar to ours, some under statutes quite different.

In McDonald-Weist Logging Co. v. Cobb, (9th Cir. 1922) 278 F. 167, 168, the Ninth Circuit Court of Appeals held as follows:

"It is argued that the statute does not give a lien to a contractor or a corporation. The general rule is that a corporation is included within the word 'person.' Lewis' Sutherland, Statutory Construction, 770; 14 C.J. 1233. In Wetzel & T. R. Co. v. Tennis, 145 Fed. 458, 75 C.C.A. 266, 7 Ann.Cas. 426, after specifying that at common law a corporation is deemed a person, when the circumstances in which it is placed are identical with those of a natural person, the court, citing many cases, held that, where a lien is given to every workman, laborer, or other person the right could be claimed by a corporation. The remedy is designed to be general in favor of the party by whom the service is rendered. Such a view appeals to us as a fair construction of the Alaska statute. [Citing authority.] Statutes which contain restrictive words or expressions, such as those which give the right of lien for 'personal services' or 'manual labor,' are (17 R.C.L. 1118) to be distinguished from

the Alaska statute, which is general in its terms, and in which we find no language indicative of the intention to restrict the operation to natural persons only."

First, it is noted that from the Alaska statute as quoted in the reported opinion it is identical to our own only insofar as it goes. A reading of section 709 in Compiled Laws of the Territory of Alaska of 1913 shows that it does not have the distinction made, as previously shown, between a *person* and *corporation* owning other sawlogs, nor does it have the distinction made by the 1909 amendment, referred to previously, between a *contractor* or *subcontractor* and *any person* relating to whose instance the work is done. These distinguishing words are what the Ninth Circuit Court meant is the language "Indicative of the intention to restrict the operation to natural purposes only."

The other Alaska statute concerning a lumber worker's lien contained in section 710, Compiled Laws of the Territory of Alaska, 1913, also significantly does not contain the language which caused this Court's comments as previously indicated in the Lane case.

The Logging Corporation, appellant here, also cites Carver v. Bagley, 79 Minn. 114, 81 N.W. 757, which held that "Remedial statutes of the character of this one are entitled to a broad and liberal construction; such a construction as will give force and effect to the intention of the legislature. So construed, there can be no question but that plaintiffs, even though they were contractors or subcontractors, are entitled to a lien, and to all the benefits given by law. The law as amended does not limit the lien to persons who perform 'manual labor,' but is extended to persons who perform 'labor or services.' "

This Minnesota decision was made in the year 1900, some ten years prior to our own Lane case, supra, which discusses the reasons for our 1909 amendment in the same particulars. We have not been able to discover, other than as quoted above,

just what difference may have existed in the Minnesota statute considered in 1900, but, the case is not persuasive.

In connection with cases from foreign jurisdictions, both appellant and respondents have discovered what we do. The differences in statutes are such that each decision rests on its own perculiar facts and law. Even though appellant's counsel flatly states that the Alaska statute considered in McDonald-Weist Logging Co. v. Cobb, supra, was identical, such is not the case.

In the instant case, the individuals who actually expended physical labor to harvest the timber crop are not seeking to enforce a lien, they having been paid; rather it is a corporation acting in the capacity of an independent contractor, who, in this case, hired individuals to do the physical labor. As the trial court found, this claim would cover not only the funds paid out for labor, but overhead and profits as well.

The Logging Corporation's three remaining propositions would be germane only if an affirmative answer were returned on this one. Thus, we need not determine them, and the appeal fails. This matter comes on a rehearing granted, and the opinion heretofore promulgated on September 5, 1963, is hereby withdrawn. The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, HUGH ADAIR and STANLEY M. DOYLE, concur.